513 P.2d 374

**STATE of Arizona, Appellee,**

v.

**Michael LOCKNER, Appellant.**

**No. I CA–CR 499.**

Court of Appeals of Arizona,
Division 1,
Department A.

Aug. 30, 1973.

Rehearing Denied Oct. 23, 1973.

Review Denied Nov. 20, 1973.

**368**

Gary K. Nelson, Atty. Gen. by Peter Van Orman, Asst. Atty. Gen., for appellee.

Samuel L. Costanzo, Phoenix, for appellant.

## OPINION

STEVENS, Judge.

Arising out of incidents which occurred in the early morning of 11 November 1971 the Grand Jury in Maricopa County returned a five-count indictment. Six persons were charged in the indictment which was filed by the Clerk of the Superior Court on 23 November 1971. Michael Lockner, the defendant-appellant, along with all of the remaining persons, was charged in Count One of the indictment with the robbery of James O. Hawkins. Lockner only, pursuant to A.R.S. § 13–249 as amended in 1967, was charged in Count Three of the indictment with an assault upon one Daniel Hughes with a deadly weapon, to wit, a gun.

Each defendant named in the indictment appeared by separate counsel. The indict-

ment was dismissed as to one defendant. Count One was dismissed as to the defendant Lockner and he was separately tried on the charge of an assault with a deadly weapon. The jury found him guilty and the court placed him on probation, one of the conditions thereof being that he serve one year in the county jail. A certificate of probable cause was issued and Lockner, hereinafter referred to as the defendant, was released pending the outcome of his appeal.

The offense in question occurred when two special agents of the Bureau of Narcotics and Dangerous Drugs, a federal agency, sought to place the defendant under arrest as the defendant was running from Room 109 of a Phoenix motel at approximately 2:50 in the morning of 11 November 1971. The defendant urges that the agents did not have probable cause to place him under arrest and that the force that he used to resist the claimed unlawful arrest was reasonable.

There were numerous preliminary motions made by the several defendants, including the defendant-appellant. The motion of this defendant to disclose the name of the informant was denied. Nevertheless, on 13 January 1972, before the trial commenced on 17 January 1972, the County Attorney filed a document advising that the informant was Jimmy Albert Scott of Baton Rouge, Louisiana. Scott's name was endorsed on the indictment as a witness, but the endorsement does not disclose his character as an informant or his address. On the morning the trial was scheduled to commence, the defendant filed a motion to suppress the evidence and for a separate hearing to determine the legality of the arrest. Without expressly waiving the 60-day period within which a trial must be held, which period was about to expire, the defendant sought not only a separate hearing as to the presence of probable cause for his arrest, but also time within which to subpoena witnesses. Defendant urged at all stages of the trial and urges on appeal that the decision as to the presence or

absence of probable cause for an arrest without a warrant is a question of law for the court. The trial court denied his motion. It must be remembered that the motion to suppress, so-called, did *not* relate to physical evidence secured by search and seizure and did *not* relate to statements attributed to the defendant.

The first witness for the State was Bureau Agent Mann. Over objection of the defendant, Mann was permitted to testify that on the afternoon of the 10th day of November there was a meeting of Bureau agents in the Bureau office in Phoenix. Agent Talak was in charge of the meeting. He briefed those agents who were present as to a telephone conversation he had had with Agent Hawkins. The telephone call originated in New Orleans. Hawkins related a conversation with informer Scott. Agent Talak advised the agents of the Bureau that in the early morning hours of 11 November in Room 109 of a named Phoenix motel there would be an attempt to make a $10,000 cash buy of marijuana. The agents suspicioned that the attempted buy might resolve itself into a robbery. During the course of the testimony of Agents Hughes and Talak there were no questions asked on either direct or cross-examination as to the background information concerning which Agent Mann had testified.

Agent Mann understood that there would be other Bureau agents and possibly Phoenix police at the motel on a surveillance. Agent Mann did not hear the name of the defendant; he had never seen the defendant before the incidents in question; he had no knowledge of the defendant's actual participation in any event in Room 109; and he had no personal knowledge of the events which transpired in the room. There was no evidence presented as to what actually took place in Room 109. There was no indication that the indictment contained other counts.

At approximately 2:30 a. m. on the 11th, pursuant to a radio message which he received in his car, Agent Mann proceeded

to the motel. Agent Mann was dressed in casual clothing and his appearance was not one of a law enforcement agent. At the motel he saw Agent Hawkins. Informer Scott was pointed out to him. Agent Mann assumed his surveillance position in the parking lot near one of the two entrances to Room 109, the other entrance being on the opposite side of the room. Presently the defendant and possibly three other persons burst from the parking lot door, the defendant running in one direction and the other persons runnning in a different direction. The defendant ran in the direction where Agent Mann had positioned himself. Agent Mann ordered the defendant to stop and told him he was under arrest. He told the defendant to put his hands on the wall. He did not recall whether he advised the defendant that he was an officer. Agent Mann had his gun in his hand. The defendant briefly complied with Agent Mann's directive and then broke and ran. Agent Mann then commenced his pursuit.

Agent Hughes, the person named in Count Three of the indictment as being the one who was the recipient of the assault with a deadly weapon, had seen another person being placed under arrest and upon seeing the running defendant, he started to pursue him. During the course of Agent Hughes' pursuit he saw Agent Mann running behind him. During the pursuit by Agent Hughes he observed the defendant glance back at least once. At least twice Agent Hughes yelled at the defendant, identifying himself as a federal agent or as a special agent, directing that the defendant stop, and stating that the defendant was under arrest. Agent Hughes was likewise informally dressed and was armed.

The defendant disappeared around two corners of a breezeway in one of the buildings of the motel and when Agent Hughes rounded the second corner he saw the defendant partially behind a parked automobile, with a pistol in both hands, pointed directly at or approximately at Agent Hughes. The defendant stated: "Hold it right there, M— F—." The distance between the men was so small that it was Agent Hughes' judgment that had the defendant fired he could not have missed Agent Hughes. Agent Hughes retreated for cover and in so doing came in contact with the also pursuing Agent Mann. They looked around the corner and saw the defendant vaulting a wall. Agent Talak appeared and was informed as to the events. Agent Talak drove his car to the opposite side of the wall and secured the assistance of other agents and uniformed police, as well as marked police cars. The defendant emerged from the shadows of a building with his hands up and he was placed under arrest. Nearby under a piece of metal, Agent Talak retrieved a revolver with five shells in it. Agent Hughes testified that it was the same gun or very similar to the gun which he saw in the hands of the defendant. Neither the revolver nor the shells were test fired while in police custody. They were introduced into evidence and were available to the jury during their deliberations. Agent Talak testified as to his familiarity with guns, and testified that the firing pin appeared to be in working order.

## WAS THE REVOLVER OPERABLE?

A.R.S. § 13–249, as amended, reads in part as follows:

"§ 13–249. Assault with deadly weapon or force; * * *

"A. A person who commits an assault upon the person of another with a deadly weapon or instrument, or by any means or force likely to produce great bodily injury, * * *."

The defendant urges that there was no showing that the gun was operable or that the shells were loaded, thus the defendant urges that there is a lack of showing of the present ability of the revolver to cause harm to Agent Hughes and therefore that the offense charged has not been proven. We do not agree with this contention. In the prosecution of a robbery with the use of a gun, it is the burden of the defendant to prove that the gun was

not loaded. See State v. Gregory, 108 Ariz. 445, 501 P.2d 387 (1972). We apply the same reasoning to this case. See also State v. Aldrich, 75 Ariz. 53, 251 P.2d 653 (1952). There was no evidence to overcome the apparent operability of both the revolver and the shells with which it was loaded.

## WERE THE ATTEMPTS TO ARREST THE DEFENDANT WITHOUT A WARRANT LAWFUL?

A.R.S. § 13–1403, as that statute read at the time of the events in question, relates to the authority of an officer to arrest without a warrant. Subsection 4 thereof read as follows:

"4. When he has probable cause to believe that a felony has been or is being committed and reasonable ground to believe that the person to be arrested has committed or is committing it."

In other words, did Agents Mann and Hughes have reasonable grounds to believe that there was probable cause to arrest the defendant under the circumstances? We hold that they did.

■ Hearsay, even hearsay on hearsay, is admissible in evidence to lay the foundation for the determination as to whether, at the time of the arrest, the officers as reasonable men had grounds to arrest the defendant pursuant to the authority of A. R.S. § 13–1403, subsec. 4. State v. Pederson, 102 Ariz. 60, 424 P.2d 810 (1967) and United States v. Simon, [U.S.Ct. of App. —7th Cir.] 409 F.2d 474 (1969).

■ Under Arizona law there is no distinction between principals and accessories before the fact. A.R.S. § 13–138. Persons are principals even though they only aid and abet. A.R.S. § 13–139. Accessories are charged and prosecuted as principals. A.R.S. § 13–140. The totality of the circumstances was sufficient to lead Agents Mann and Hughes to believe that a felony was being committed or had just been committed in Room 109 and that the defendant was implicated as a principal. Under all of the facts and circumstances the arrest

without a warrant was a lawful arrest. State v. Robinson, 6 Ariz.App. 424, 433 P. 2d 75 (1967); State v. Pine, 8 Ariz.App. 430, 446 P.2d 940 (1968); and Boddie v. Maryland, 6 Md.App. 523, 252 A.2d 290 (1969). The circumstances authorized Agent Mann's attempt to conduct an investigative stop of the defendant, if not an arrest, and the defendant's conduct thereafter was sufficient to make his arrest without a warrant lawful. United States v. Jackson, [U.S.Ct. of App., 9th Cir.] 423 F.2d 506 (1970).

■ The defendant relies upon his claim of an unlawful arrest and his right to resist the same, "using such force as may be reasonably necessary, short of killing the arresting officer." Dugan v. State, 54 Ariz. 247 at 250, 94 P.2d 873 at 874 (1939). The phrase "short of killing the arresting officer" chills this Court, especially in the matter of an arrest by law enforcement officers. While that statement is apparently the law in Arizona, in our opinion it invites violence. We believe the better rule is that under those circumstances the interest of the individual must give way to the interest of the public and the individual may seek his remedy following the arrest. These thoughts are expressed in People v. Carroll, 272 N.E.2d 822 (Ill.App.1971). In this connection we recognize the presence of an Illinois statute on that subject.

## FAILURE TO CONDUCT A HEARING OUT OF THE PRESENCE OF THE JURY

■ The denial of the 17 January 1972 request for a hearing out of the presence of the jury to inquire into the presence of probable cause for an arrest without a warrant is urged as error. The request was a combined request seeking a delay of the trial. We believe it would have been better practice for the trial judge to have denied a postponement of the trial and to have conducted a hearing out of the presence of the jury. On the other hand, a finding of an absence of probable cause to justify an arrest under A.R.S. § 13–

1403, subsec. 4 would not have precluded a trial because the issue of the presence or absence of an excessive amount of force exercised by the defendant would still be the subject of jury consideration. We hold it was not reversible error to deny the hearing, there being no question as to an unreasonable search and seizure and there being no question relative to statements attributable to the defendant. Arizona is committed to the "complete story" in the trial of criminal cases even though a disclosure of portions of the story, of the surrounding facts and circumstances, might lead the jury to believe that the defendant had committed criminal acts other than the one for which he is on trial. State v. Villavicencio, 95 Ariz. 199, 388 P.2d 245 (1964); State v. Albe, 10 Ariz.App. 545, 460 P.2d 651 (1969); State v. Mahoney, 106 Ariz. 297, 475 P.2d 479 (1970); and State v. Hutton, 109 Ariz. 356, 509 P.2d 626 (1973). The complete story of all of the facts and circumstances was essential for the consideration of the jury. The trial court did not make an express ruling that the arrest was or was not a lawful arrest, a matter which the defendant requested be decided as a matter of law. The effect of the rulings on instructions and the posture in which the case was submitted to the jury had the effect of a ruling that there was probable cause for an arrest without a warrant.

## THE COMPETENCE OF COUNSEL

 The defendant's counsel on appeal represented the defendant in the trial. He seriously urges that the rulings of the trial court made it impossible for him to be effective counsel in his representation of the defendant and thus the defendant was deprived of his constitutional right to counsel. We have examined the extensive pleadings which he filed. We have observed the numerous and vigorous objections and motions which he presented during the trial. We appreciate the care and extent with which he cross-examined the State's witnesses. We cannot agree that the defendant was represented by ineffective counsel.

## THE OVERALL RECORD

We have reviewed the entire record together with other suggested areas of error. While we are not in complete accord with the trial court, we find an absence of reversible error.

The judgment of guilt is affirmed.

DONOFRIO, P. J., and OGG, J., concur.