313 So.2d 479 (1975)
Leon Norman BURGESS, Appellant,
v.
STATE of Florida, Appellee.
No. 74-816.
District Court of Appeal of Florida, Second District.
May 28, 1975.
*480 James A. Gardner, Public Defender, Sarasota, and Durand J. Adams, Asst. Public Defender, Bradenton, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and Charles Corces, Jr., Asst. Atty. Gen., Tampa, for appellee.
SCHEB, Judge.
The appellant was charged with resisting arrest with violence contrary to Fla. Stat. § 843.01 and was tried by jury. After the state rested its case, appellant moved for a judgment of acquittal under RCrP 3.380. Upon denial, appellant changed his plea to nolo contendere to the lesser offense of resisting arrest without violence proscribed by Fla. Stat. § 843.02. Appellant was placed on probation for three years and now appeals the judgment and sentence of the trial court.
There is no dispute as to the essential facts. Between 9:00 and 10:00 A.M. on August 8, 1973, while on routine patrol, Officer Gary Hitchcox observed two men walking down a street in St. Petersburg. One left the other and cut through a yard, thereby arousing the officer's suspicion. Officer Hitchcox circled the block twice and the second time around came upon the same two men walking together. The smaller of the two men left the other, the appellant, and started to cross a field. The smaller man was walking a dog on a leash across the field and when appellant saw the officer's police cruiser he yelled something to the smaller man who then ran. This action by appellant further aroused the officer's suspicions. Officer Hitchcox left his police cruiser and pursued the running man for about two blocks, but could not catch him. Returning to his cruiser he again came upon the appellant who was now with two other men. He asked appellant if he knew the man who ran but appellant refused to answer. He then asked appellant for some identification but he refused to identify himself. Being unable to learn anything from the appellant, Officer Hitchcox returned to his police cruiser and asked for a backup unit. As additional officers arrived to assist, Officer Hitchcox again stopped the appellant and asked him for some identification. The appellant again refused to identify himself, whereupon the officer told the appellant:
"If you don't give me the information, your name, or give me some identification, I'm going to place you under arrest for obstruction."
According to the officer, appellant responded by stating:
"Well, you'll have to fight me to take me to jail." Officer Hitchcox attempted to *481 place the appellant under arrest for obstructing a police officer without violence. By this time with additional police officers on the scene, the appellant fought the police inflicting minor injuries on two of them. Appellant's actions gave rise to the charge of resisting arrest with violence being placed against him.
The appellant pled nolo contendere, reserving the right to appeal the trial court's denial of his motion for judgment of acquittal. State v. Ashby, Fla. 1971, 245 So.2d 225; Facion v. State, Fla.App.2d 1974, 290 So.2d 75. Since the evidence did not show any lawful basis for the appellant's arrest, he could not be found guilty of resisting arrest. Therefore, the trial court erred in denying appellant's motion. We reverse.
The evidence revealed a very uncooperative attitude on the part of the appellant. We can well appreciate that the police officer believed the appellant was unreasonable in failing to respond to his requests for identification. Nevertheless, the court's function is to determine whether there was a lawful basis for appellant's arrest.
While it is permissible for a police officer to detain an individual under Florida's Stop and Frisk Law, Fla. Stat. § 901.151, we are unaware of any requirement of law for an individual citizen to disclose his identity under the factual situation sub judice. In Terry v. Ohio, 1968, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, the Supreme Court upheld the right to stop and frisk individuals, with Justice White, in his concurring opinion stating:
"There is nothing in the Constitution which prevents a policeman from addressing questions to anyone on the streets. Absent special circumstances, the person approached may not be detained or frisked but may refuse to cooperate and go on his way. However, given the proper circumstances, such as those in this case, it seems to me the person may be briefly detained against his will while pertinent questions are directed to him. Of course, the person stopped is not obliged to answer, answers may not be compelled, and refusal to answer furnishes no basis for an arrest, although it may alert the officer to the need for continued observation." 392 U.S. at 34, 88 S.Ct. at 1886, 20 L.Ed.2d at 913. (Emphasis supplied)
While it is unnecessary that an arrestee be guilty of the crime for the arrest to be lawful, Canney v. State, Fla. App.2d 1973, 298 So.2d 495, still there must be legal grounds for the arrest for it to be valid. See City of Miami v. Albro, Fla. App.3d 1960, 120 So.2d 23. The arrestee cannot be convicted under either Fla. Stat. §§ 843.01 or 843.02, unless the arrest is lawful. Licata v. State, 1945, 156 Fla. 692, 24 So.2d 98; English v. State, Fla.App.1st 1974, 293 So.2d 105; Kirby v. State, Fla. App.4th 1969, 217 So.2d 619; Roberts v. State, Fla.App.3d 1962, 142 So.2d 152. The Florida view is consistent with the common law rule that one who resists an unlawful arrest may not be found guilty of resisting arrest. Of course, if an arrestee uses excessive force, however, he may be guilty of another offense, such as assault or homicide. 5 Am.Jur.2d, Arrest, § 94.
The right to resist an unlawful arrest has been the subject of much recent discussion.[1] We support the reasoning and the conclusion so well articulated by the Supreme Court of Alaska in its opinion in Miller v. State, Alaska 1969, 462 P.2d 421, 426-27, wherein that court receded from the common law rule which allows forceful resistance to an unlawful arrest, stating:
The weight of authoritative precedent supports a right to repel an unlawful arrest with force. United States v. Di Re, 332 U.S. 581, 594, 68 S.Ct. 222, 92 L.Ed. 210 (1948); John Bad Elk v. United *482 States, 177 U.S. 529, 537, 20 S.Ct. 729, 44 L.Ed. 874 (1900); United States v. Heliczer, 373 F.2d 241, 248 (2d Cir.1967), cert. den. 388 U.S. 917, 87 S.Ct. 2133, 18 L.Ed.2d 1359; 1 Wharton, Criminal Law & Procedure, Sec. 216 (1957). This was the rule at common law. It was based upon the proposition that everyone should be privileged to use reasonable force to prevent an unlawful invasion of his physical integrity and personal liberty.
But certain imperfections in the functioning of the rule have brought about changes in some jurisdictions. A new principle of right conduct has been espoused. It is argued that if a peace officer is making an illegal arrest but is not using force, the remedy of the citizen should be that of suing the officer for false arrest, not resistance with force. The legality of a peaceful arrest may frequently be a close question. It is a question more properly determined by courts than by the participants in what may be a highly emotional situation. Because officers will normally overcome resistance with necessary force, the danger of escalating violence between the officer and the arrestee is great. What begins as an illegal misdemeanor arrest may culminate in serious bodily harm or death.
The control of man's destructive and aggressive impulses is one of the great unsolved problems of our society. Our rules of law should discourage the unnecessary use of physical force between man and man. Any rule which promotes rather than inhibits violence should be re-examined. Along with increased sensitivity to the rights of the criminally accused there should be a corresponding awareness of our need to develop rules which facilitate decent and peaceful behavior by all.
The common law rule was developed in a time when self-help was a more necessary remedy to resist intrusions upon one's freedom.
"[It] was developed largely during a period when most arrests were made by private citizens, when bail for felonies was usually unattainable, and when years might pass before the royal judges arrived for a jail delivery. Further, conditions in English jails were then such that a prisoner had an excellent chance of dying of disease before trial. Warner, "The Uniform Arrest Act," 28 Va. L.Rev. 315 (1942).
Section 5 of the Uniform Arrest Act provides:
"If a person has reasonable ground to believe he is being arrested by a peace officer, it is his duty to refrain from using force or any weapon in resisting arrest regardless of whether or not there is a legal basis for the arrest."
That provision, or its equivalent, has been enacted as statutory law in California, Rhode Island, New Hampshire, and Delaware. The Model Penal Code, Section 3.04(2)(a)(i) similarly prohibits the use of force "to resist an arrest which the actor knows is being made by a peace officer, although the arrest is unlawful." In support of this provision Judge Learned Hand stated:
"The idea that you may resist peaceful arrest * * * because you are in debate about whether it is lawful or not, instead of going to the authorities which can determine, * * * [is] not a blow for liberty but on the contrary, a blow for attempted anarchy." 1958 Proceedings, American Law Institute, at 254.
At least one state court has adopted the recommended rule as a matter of its common law development. State v. Koonce, 89 N.J. Super. 169, 214 A.2d 428 (1965). The legal literature contains discussions on how much force may be used by either an officer making a lawful arrest or by an unlawfully arrested person in resisting arrest. "Justification for the Use of Force in the Criminal Law," 13 Stan.L.Rev. 566 (1961); "Criminal Law: Force That May be *483 Used to Resist an Illegal Arrest," 9 Okl. L.Rev. 60 (1956). At best only elastic standards can be employed, as so much depends upon the exigencies of the situation, the gravity of the offense, and the amount of force and counterforce used or threatened.
To us the question is whether any amount of force should be permitted to be used by one unlawfully but peaceably arrested. We feel that the legality of a peaceful arrest should be determined by courts of law and not through a trial by battle in the streets. It is not too much to ask that one believing himself unlawfully arrested should submit to the officer and thereafter seek his legal remedies in court. Such a rule helps to relieve the threat of physical harm to officers who in good faith but mistakenly perform an arrest, as well as to minimize harm to innocent bystanders. The old common law rule has little utility to recommend it under our conditions of life today. We hold that a private citizen may not use force to resist peaceful arrest by one he knows or has good reason to believe is an authorized peace officer performing his duties, regardless of whether the arrest is illegal in the circumstances of the occasion.[4]
[4.] It should be noted that the rule we formulate today has no application when the arrestee apprehends bodily injury, or when an unlawful arrest is attempted by one not known to be a peace officer. Quite different problems are then presented.
In State v. Richardson, 1973, 95 Idaho 446, 511 P.2d 263, the court adopted the rule elaborated by the Supreme Court of Alaska. Another recent case expressing dissatisfaction with the common law rule is State v. Lockner, 1973, 20 Ariz. App. 367, 513 P.2d 374, 378.
The quoted extract from the opinion in Miller, supra, is consonant with the tenor of this court's opinion in Daniel v. State, Fla.App.2d 1961, 132 So.2d 312, requiring law enforcement officers to make known their official capacity before making an arrest, and with the philosophy of this court's opinion in State v. Fulkerson, Fla. App.2d 1974, 300 So.2d 275, that one imprisoned under some color of law is not entitled to resort to self-help but rather may apply for his release through regular channels of the law.[2] In our role it is not appropriate to enunciate a rule of law which departs from the established common law as interpreted by the decisions of the Supreme Court of Florida. It is our duty, however, to advocate such changes as we feel necessary. Abiding by the judgment of the Supreme Court on the method of advocating such changes[3] and in view of this decision passing upon a question of great public interest, under the authority of Art. V, § 3(b)(3), we certify the following question to the Supreme Court of Florida:
May one forcefully resist an unlawful arrest by a person whom he knows or has reason to know to be an authorized peace officer?
Reversed.
HOBSON, Acting C.J., and GRIMES, J., concur.
NOTES
[1] See, e.g., Chevigny, The Right to Resist an Unlawful Arrest, 78 Yale L.J. 1128 (1969); Annot., Modern Status of Rules as to Right to Forcefully Resist Illegal Arrest, 44 A.L.R.3d 1078 (1972).
[2] Although Fla. Stat. § 843.01 provides:

"Whoever knowingly and willfully resists, obstructs or opposes any sheriff, ... or other person legally authorized to execute process, in the execution of legal process or in the lawful execution of any legal duty, by offering or doing violence to the person of such officer or legally authorized person, shall be guilty of a felony of the third degree, . .." (Emphasis supplied)
we do not perceive the words to preclude our Supreme Court from receding from the criticized doctrine in favor of a modern approach. The quoted words appear to refer to execution of duties generally.
[3] Hoffman v. Jones, Fla. 1973, 280 So.2d 431.