STATE of Iowa, Appellee,

v.

Leslie THOMAS and Laurel
Thomas, Appellants.

Nos. 58209 and 58210.

Supreme Court of Iowa.

Feb. 22, 1978.

Michael J. Cross and James E. Coonley, II of Coonley & Coonley, Hampton, for appellants.

Richard C. Turner, Atty. Gen., Thomas A. Evans, Jr., and Ray W. Sullins, Asst. Attys. Gen., Carroll Wood, County Atty., for appellee.

Considered by MOORE, C. J., and RAWLINGS, REES, UHLENHOPP, and McCORMICK, JJ.

RAWLINGS, Justice.

Defendants appeal from judgments on joint trial jury verdicts finding them guilty of resisting arrest in violation of Section 742.1, The Code 1973. We affirm.

Viewed most favorably to the verdicts, these are the relevant facts.

Defendants, Leslie Thomas (Leslie) and his son Laurel Thomas (Laurel), each own and operate an eastern Hamilton County farm. In early March of 1974, Laurel, absent any license or permit to so do, began constructing a field access driveway and widening his farmyard entrance. He installed culverts and dumped dirt into the right-of-way ditch between his property and adjacent county road.

March 13th, Sheriff K. G. Farnham (Farnham), acting at the county engineer's request, contacted defendants at the field access site. They were advised by Farnham that it was illegal for them to so construct the driveways and arrangements would have to be made with the county engineer for such work. Though defendants told Farnham they would stop construction, Laurel in fact continued work on both driveways.

April 5th, the county engineer asked Farnham to escort a county maintenance crew which had been directed to remove the driveways constructed by defendants.

Farnham and the crew were met at the field access site by defendants, who asked what was going on. Farnham told them the maintenance crew was going to remove the driveways which had been illegally constructed.

Soon thereafter Leslie entered the ditch and stepped into the dragline bucket being used by the maintenance team, thereby preventing further work progress.

Farnham thereupon told Leslie he was violating the law by interfering with the crew's work and ordered him to get out of the bucket. Leslie refused to comply. Farnham then informed Leslie he was under arrest and grabbed his arm.

At that moment Laurel also approached and in turn grabbed the sheriff's arm. Leslie stepped out of the bucket and walked into the field, followed by Farnham and Laurel. Farnham once more informed Leslie he was under arrest and again grabbed his arm when Leslie refused to go to the sheriff's car.

Defendants then explained Leslie had recently suffered some broken ribs and Farnham released his hold. Laurel was next placed under arrest.

It eventually took several maintenance men to assist Farnham in carrying an uncooperative Laurel to the sheriff's vehicle. In the process Farnham slipped in the mud and Leslie briefly prevented him from regaining his feet. Leslie repeatedly refused to leave with Farnham, who did not try to force him because of the reported rib injuries.

On these consolidated appeals defendants concurrently raise the same six issues for review, several replete with numerous subsumed questions, presently omitted.

Did trial court err:

(1) in overruling motion for directed verdict;

(2) in its formulation of the marshalling instruction;

(3) by its aiding and abetting instruction;

(4) by instructing on the crimes of obstructing ditches and roads;

(5) by instructing on the amount of force an officer may use in effecting an arrest;

(6) in overruling new trial motion?

There is neither need to nor do we entertain all of these questions.

I. Initially, there was confusion at trial as to exactly what the indictments charged. Referring to language therein, defendants claimed they were charged with resisting execution of some written process or order, existence of which the State had not even attempted to prove.

In this regard, each defendant was instantly accused of resisting execution "of a legal process or order" in that they "[r]esisted K. G. Farnham * * * in the Execution of a Legal Process, to wit: Resistance to Arrest, in violation of Section 742.-1".

Section 742.1, The Code 1973, said in pertinent part:

"If any person knowingly and willfully resist or oppose any officer of this state * * * in serving or attempting to execute any legal writ, rule, order, or process whatsoever, *or shall knowingly and willfully resist any such officer in the discharge of his duties* without such writ, rule, order, or process, he shall be * * [guilty of an indictable misdemeanor]." (emphasis supplied).

Defendants' misinterpretation of the indictments merits little discussion. As accurately described by trial court: "[T]here is absolutely no process whatsoever in this case. None * * * Next, this particular case rises or falls upon * * * whether or not a misdemeanor was committed in the presence of the officer * * *." This description is also supported by the minutes of testimony. See *State v. Conner,* 241 N.W.2d 447, 452 (Iowa 1976).

In other words, each accused was arrested for a crime, neither identified in the indictment nor the subject of this prosecution, and he then *resisted arrest.*

Noticeably, resisting warrantless arrest is conduct proscribed by § 742.1 because it amounts to resisting an arresting officer's lawful discharge of his duties. Cf.

*State v. Donner,* 243 N.W.2d 850, 852–853 (Iowa 1976); *State v. Yates,* 243 N.W.2d 645, 646 (Iowa 1976); *State v. Graham,* 203 N.W.2d 600, 603 (Iowa 1973). But the formal, statutory appellation is "resisting execution of process". § 742.1. See, e. g., *State v. Yates,* 243 N.W.2d at 646.

We are satisfied defendants were adequately notified of the charges against them by these indictments. Nothing more is required. *State v. Davison,* 245 N.W.2d 321, 324 (Iowa 1976); *State v. Lass,* 228 N.W.2d 758, 765 (Iowa 1975); §§ 773.4, 773.-5.

Moreover, any confusion caused by indictment reference to a "legal process" could have been clarified by a § 773.6 bill of particulars motion or § 777.2 demurrer. Defendants' failure to file either waives any inconsistency in the charging phraseology. See *State v. Walker,* 236 N.W.2d 292, 295 (Iowa 1975); *State v. Grady,* 231 N.W.2d 869, 874 (Iowa 1975); *State v. Lavin,* 204 N.W.2d 844, 847 (Iowa 1973); *State v. Medina,* 165 N.W.2d 777, 779 (Iowa 1969); Code § 777.3.

II. Next considered is defendants' main contention, timely asserted by their directed verdict motion and objection to the marshalling and prior offenses instructions, later reiterated by a new trial motion.

As noted above, Leslie and Laurel were here prosecuted for one crime: resisting arrest. Correspondingly, trial court set out in its marshalling instruction the following elements to be proved by the State beyond a reasonable doubt:

"1. That the defendant committed a public offense in the presence of a peace officer or a public offense had in fact been committed, and a peace officer had reasonable grounds for believing that the defendant had committed it.

"2. That a peace officer was lawfully discharging his duties as such officer.

"3. That the defendant knowingly and willfully resisted or opposed said peace officer."

In support of their trial court objection thereto defendants strenuously contend the State must prove commission of the underlying or initial offenses as an essential element of these resisting arrest prosecutions. They also deny either defendant committed any such initial offense and attendantly assert the arrests were illegal. Therefore, say defendants, they were entitled under law to offer reasonable resistance.

■ Although the parties cast their lots on resolution of the above stated questions concerning the initial arrests, we find them presently irrelevant. Assuming without deciding defendants' arrests were unlawful, we are not prepared to endorse or excuse their resistance thereto.

At common law, reasonable resistance to unlawful arrest was privileged conduct. See *United States v. Di Re,* 332 U.S. 581, 594, 68 S.Ct. 222, 228, 92 L.Ed. 210 (1948); *John Bad Elk v. United States,* 177 U.S. 529, 20 S.Ct. 729, 732, 44 L.Ed. 874 (1900). See also *Rodgers v. State,* 280 Md. 406, 373 A.2d 944, 947–952 (1977); Chevigny, The Right to Resist an Unlawful Arrest, 78 Yale L.J. 1128, 1129–1132 (1969) (hereinafter cited as Chevigny); Note, 3 Tulsa L.J. 40, 43–46 (1966). Several Iowa cases are in accord. *State v. Rowe,* 238 Iowa 237, 245–248, 26 N.W.2d 422, 427–428 (1947); *State v. Fador,* 222 Iowa 134, 137–140, 268 N.W. 625, 627–628 (1936); *State v. Small,* 184 Iowa 882, 169 N.W. 116 (1918).

More recently, however, this common law principle has suffered a devastating deluge of criticism. See *United States v. Ferrone,* 438 F.2d 381, 389–390 (3d Cir. 1971); *United States v. Vigil,* 431 F.2d 1037, 1040–1043 (10th Cir. 1970); *United States v. Simon,* 409 F.2d 474, 477 (7th Cir. 1969); *United States v. Heliczer,* 373 F.2d 241, 246 & n. 3 (2d Cir.), cert. denied, 388 U.S. 917, 87 S.Ct. 2133, 18 L.Ed.2d 1359 (1967); *United States ex rel. Kilheffer v. Plowfield,* 409 F.Supp. 677, 680–682 (E.D.Pa.1976); *United States ex rel. Horelick v. Criminal Ct., City of New York,* 366 F.Supp. 1140, 1150–1152 (S.D.N.Y.1973), rev'd on other grounds, 507 F.2d 37 (2d Cir. 1974); *State v. Lockner,* 20 Ariz. App. 367, 513 P.2d 374, 378 (1973); *Burgess*

*v. State,* 313 So.2d 479, 481–483 (Fla.App. 1975), certification declined, 326 So.2d 441 (Fla.1976); *Rodgers v. State,* 373 A.2d at 946–952. See generally Warner, The Uniform Arrest Act, 28 Va.L.Rev. 315, 330–331 (1942); Note, 83 Harv.L.Rev. 626, 636–638 (1970); Comment, 7 Nat. Resources J. 119 (1967); Note, 3 Tulsa L.J. 40 (1966). But see, e. g., *Chevigny.*

As a consequence many jurisdictions have statutorily abrogated the aforesaid common law rule because it has come to be generally regarded as an anachronistic and dangerous concept. Cal.Penal Code § 834a (West Supp.1968), held constitutional in *People v. Curtis,* 70 Cal.2d 347, 74 Cal.Rptr. 713, 450 P.2d 33 (1969); Conn.Gen.Stat. § 53a–23, construed in *State v. Concaugh,* 170 Conn. 95, 365 A.2d 395 (1976); Del.Code Ann. tit. II, § 1905 (1951), construed in *State v. Winsett,* 8 Storey 111, 58 Del. 111, 205 A.2d 510, 518 (1964); Fla.Stat. § 776.051(1), construed in *K. G. v. State,* 338 So.2d 72, 74 (Fla.App. 1976); Ill.Ann.Stat. ch. 38, §§ 7–7 & 31–1 (Smith-Hurd 1961), construed in *People v. Locken,* 59 Ill.2d 459, 322 N.E.2d 51, 53–54 (1975); Neb.Rev.Stat. § 28–836(2), construed in *State v. Bear Runner,* 198 Neb. 368, 252 N.W.2d 638, 642 (1977); N.H.Rev. Stat.Ann. § 594.5 (1955); N.Y.Penal Law § 35.27 (McKinney's Supp.1972), construed in *People v. Simms,* 36 A.D.2d 23, 319 N.Y. S.2d 144, 146–147 (1971); 18 Pa.Cons.Stat. § 505(b)(1)(i); R.I.Gen.Laws Ann. § 12–7–10 (1941), held constitutional in *State v. Ramsdell,* 109 R.I. 320, 285 A.2d 399, 402–404 (1971); Tex.Penal Code § 9.31(b)(2) & 38.03, held constitutional in *Ford v. State,* 538 S.W.2d 633 (Tex.Cr.App.1976).

Noticeably, many of these statutes emulate pertinent sections of the American Law Institute's Model Penal Code and Uniform Arrest Act. Section 3.04(2)(a)(i) of the former states:

"(2) Limitations on Justifying Necessity for use of force

"(a) The use of force is not justifiable under this Section;

"(i) to resist an arrest which the actor knows is being made by a peace officer, although the arrest is unlawful * *."

And § 5 of the Uniform Arrest Act says:

"If a person has reasonable ground to believe that he is being arrested by a peace officer, it is his duty to refrain from using force or any weapon in resisting arrest regardless of whether or not there is a legal basis for the arrest."

The Iowa legislature recently joined these ranks by enacting, as part of its massive criminal code revision, § 804.12 Supplement to The Code 1977, which provides:

"A person is not authorized to use force to resist an arrest, either of himself, herself, or another which the person knows is being made either by a peace officer or by a private person summoned and directed by a peace officer to make the arrest, even if the person believes that the arrest is unlawful or the arrest is in fact unlawful."

Correspondingly revised was § 742.1, now § 719.1. Admittedly, these enactments are not applicable to conduct occurring in 1974. But they do reveal that Iowa has also recognized those operative hazards which attend the antiquated common law rule.

On similar grounds several jurisdictions have abandoned the common law rule by judicial fiat. *Miller v. State,* 462 P.2d 421, 426–427 (Alaska 1969); *State v. Richardson,* 95 Idaho 446, 511 P.2d 263, 266–268 (1973), cert. denied, 414 U.S. 1163, 94 S.Ct. 928, 39 L.Ed.2d 117 (1974); *State v. Koonce,* 89 N.J.Super. 169, 214 A.2d 428, 433–436 (App. Div.1965), approved in *State v. Mulvihill,* 57 N.J. 151, 270 A.2d 277, 279 (1970); *City of Columbus v. Fraley,* 41 Ohio St.2d 173, 324 N.E.2d 735, 739–740, cert. denied, 423 U.S. 872, 96 S.Ct. 138, 46 L.Ed.2d 102 (1975).

The cogent reasoning upon which such holdings are foundationed is well stated in many of the above-cited authorities. See, e. g., *United States v. Simon,* 409 F.2d at 477; *Kilheffer v. Plowfield,* 409 F.Supp. at 680–681; *Miller v. State,* 462 P.2d at 426–427; *People v. Curtis,* 74 Cal.Rptr. at 716–717, 450 P.2d at 36–37; *State v. Koonce,* 214 A.2d at 434–436; *City of Columbus v. Fraley,* 324 N.E.2d at 739–740.

In essence, factors which at one time justified the common law rule have long since ceased to exist. Constitutionally mandated procedural safeguards such as immediate arraignment, reasonable bail, appointed counsel, and prompt probable cause determination as well as speedy trial were all nonexistent in 18th and 19th century jurisprudence. Phrased otherwise, the illegal arrest impact on privacy and freedom rights, concededly still substantial, has been dramatically diminished. Corresponding advancements in the field of civil remedies for false arrest is another factor which justifies abandonment of the rigid common law rule.

More important, however, are the unwarranted dangers to civil order caused by this lingering artifact. Peace officers are today lethally armed and usually well trained to efficiently effect arrests. Resultantly, the resister's chances of success are seriously diminished unless he counters with equal or greater levels of force. The inevitable escalation of violence has serious consequences for both participants and innocent bystanders.

Briefly stated, a far more reasonable course is to resolve an often difficult arrest legality issue in the courts rather than on often hectic and emotion laden streets. Modern urbanized society has a strong interest in encouraging orderly dispute resolution. Confronting this is the outmoded common law rule which fosters unnecessary violence in the name of an obsolete self-help concept which should be promptly discarded.

Therefore, we now hold a person may not resist an arrest reasonably effected by one whom the arrestee knows or has good reason to know is a peace officer, despite legality or illegality of the arrest. Prior Iowa cases holding to the contrary are hereby overruled. This result is reached independently of § 804.12, Supplement to The Code 1977.

■ Further in that regard the constitution neither commands nor forbids retrospective application of the above *judicial*

ruling to these defendants. *Linkletter v. Walker,* 381 U.S. 618, 628–629, 85 S.Ct. 1731, 1737, 14 L.Ed.2d 601 (1965). Because blind reliance on old case law is patently unreasonable in light of widespread criticism during recent years, no equitable impediment to retrospective application here exists. See, e. g., *State v. West,* 252 N.W.2d 457, 460–461 (Iowa), cert. denied, —— U.S. ——, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977).

 By reason of the foregoing the jury verdicts against defendants must stand. The previously discussed instruction based issues concerning the initial, resistance-triggering arrests are no longer material. More specifically, that portion of the instructions requiring the jury to find whether those arrests were lawful constituted harmless surplusage. The jury need only have determined that Farnham, known by defendants to be a peace officer, placed Leslie and Laurel under arrest and that they resisted.

III. Remaining contentions raised by these appeals have no merit.

Defendants posit, inter alia, the aiding and abetting instruction was error because both were charged and tried as principals. They ignore evidence from which the jury could find each gave physical assistance to the other's arrest resistance attempt. *State v. Watson,* 242 N.W.2d 702, 706 (Iowa 1976); *State v. McClelland,* 162 N.W.2d 457, 464 (Iowa 1968); Code § 688.1. The instruction was warranted.

Also justified by the evidence was trial court's unrequested instruction on use of reasonable force in effecting an arrest. The record reveals Farnham did employ some force in arresting Leslie and Laurel, thereby creating a fact issue as to whether it was justified. See Section 804.8, Supplement to Code 1977. Even without a request, the court must instruct fully on all material issues, stating applicable legal principles supported by requisite evidence. *State v. Templeton,* 258 N.W.2d 380, 382 (Iowa 1977); *State v. Van Rees,* 246 N.W.2d 339, 343 (Iowa 1976); *State v. Hall,* 235 N.W.2d 702, 725 (Iowa 1975).

Finally, any additional issues raised by defendants' new trial motion are without substance and warrant no discussion.

The judgments entered on jury verdicts must stand.

AFFIRMED ON BOTH APPEALS.