671 P.2d 1289

The STATE of Arizona,
Appellee/Respondent,

v.

Rex Allen NIGHTWINE,
Appellant/Petitioner.

Nos. 2 CA–CR 2490, 2 CA–CR 2888–2PR.

Court of Appeals of Arizona,
Division 2.

June 17, 1983.

Rehearing Denied Sept. 30, 1983.

Review Denied Nov. 8, 1983.

Robert K. Corbin, Atty. Gen. by William J. Schafer III and Robert S. Golden, Asst. Atty. Gen., Phoenix, for appellee/respondent.

Thomas A. Curti, Tucson, for appellant/petitioner.

## OPINION

BIRDSALL, Judge.

The appellant was found guilty of conspiracy, transportation of cocaine and possession of cocaine for sale, the cocaine having a value over $250. He was given concurrent presumptive prison sentences of seven years on each count.

The case against the appellant arose out of an authorized wire tap of a Tucson phone. Over 1,000 calls were intercepted, 24 of which pertained to the appellant. The tapes and transcripts of these calls, made during a period from August 29 through September 19, 1979, were admitted in evidence. Since narcotics dealers have a language of their own, it was necessary that a trained police officer translate the taped conversations.

The evidence established that the appellant agreed to supply cocaine to co-conspirators Thomas Lowe and Nancy Sweat in Tucson. It was the Lowe-Sweat telephone which was the subject of the electronic surveillance. Cindy and Mary Martin were minor co-conspirators, acting, more or less, as go-betweens in the transaction. Cindy Martin, under a grant of use immunity, was the only witness to testify other than the officers. She identified the appellant as the person who agreed to supply cocaine for resale to one Larry Anderson and who brought the narcotic to Tucson on September 18, the date of the sale to Anderson. The Martin apartment on East Seneca in the city was used for the transaction rather than the Lowe-Sweat foothills residence. The apartment became the subject of a visual surveillance. Detective Eugene Anaya saw the appellant come to the apartment on the 18th and also saw him leave. The

police attempted to follow his car when he left, but he successfully shook them. However, while he was at the residence, Anaya was able to see him clearly with binoculars. When Anaya recognized him about a month later, he was arrested.

The opening brief in this appeal urges that 1) the admission of four intercepted calls of September 19 was error since the delivery of the cocaine occurred on the 18th, ending the conspiracy;

2) the admission of any of the tapes violated the appellant's Sixth Amendment right to confront and cross examine witnesses;

3) there was no independent proof of the conspiracy as to at least one of the co-conspirators;

4) the evidence was insufficient to support a conviction;

5) the officer-expert witness should not have been allowed to decode the conversations; and

6) the court erred in giving an instruction.

■ The state's answering brief responds that the appellant had waived any error as to issues 1, 2 and 6. The appellant, represented by different counsel on appeal than at trial, then moved our court to suspend this appeal to permit him to pursue post-conviction relief in the trial court on the issue of ineffective assistance of counsel. The trial court denied any relief. Judge Meehan in fact found, after an evidentiary hearing, that not only did trial counsel's representation satisfy the former Arizona standard of "farce, sham or mockery", *State v. Alaffa,* 126 Ariz. 573, 617 P.2d 525 (1980), trial counsel was reasonably competent and effectively represented the defendant, *see Cooper v. Fitzharris,* 586 F.2d 1325 (9th Cir.1978), cert. denied, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979). Since this appeal was still pending as of October 18, 1982, the effectiveness of counsel must be tested by the new Arizona standard pronounced in *State v. Watson,* 134 Ariz. 1, 653 P.2d 351 (1982); *State v. Nunez,* 135 Ariz. 257, 660 P.2d 858 (1983). This standard

requires that the record demonstrate that counsel showed at least minimal competence in representing the criminal defendant. The burden is on the defendant to prove by a preponderance of the evidence that counsel's representation did not meet the minimal competence standard. *Watson, supra.*

■ We believe this is an area in which we should give great weight to the conclusions of the trial judge. Here, the judge had no opportunity to consider the quality of counsel's performance under the new standard since *Watson* had not been decided and is cited to us only in the appellant's reply brief filed after the decision denying post-conviction relief. The *Watson* court does not address the question of whether the new Arizona standard is more, or less, demanding than the *Cooper v. Fitzharris, supra,* standard. *Watson* places the focus of review on standards rather than effectiveness. However, *Cooper* really involved a dual test, competence and effectiveness. The test for competency was reasonableness, i.e., was counsel reasonably competent? We believe any representation which was reasonably competent would also satisfy the test of minimal competence. Therefore we place great weight on that part of the finding of the trial court here that trial counsel was "reasonably competent."

We will consider all the issues presented both with regard to the ineffective assistance argument as to issues 1, 2 and 6 and substantively.

■ Appellate counsel argues that trial counsel was "ineffective" because he failed to object to the admission of the phone conversations including those after the transaction on September 18 and the instruction. The appellant agrees that these alleged errors were waived. We do not believe either the admission of the evidence or the instruction was error and therefore cannot agree that any lack of minimal competence is shown.

■ Since we do agree with both parties that any objection to the admission of the intercepted calls was waived, we next con-

sider whether the admission was fundamental error. *State v. Viertel,* 130 Ariz. 364, 636 P.2d 142 (App.1981).

■■■ The taped conversations were admissible as statements of a co-conspirator during the course and in furtherance of the conspiracy. Rule 801(d)(2)(E), Arizona Rules of Evidence, 17A A.R.S.; *State v. Politte and Zucker,* 136 Ariz. 117, 664 P.2d 661 (App.1982); *State v. Ferrari,* 112 Ariz. 324, 541 P.2d 921 (1975). If the conversations were offered to prove the truth of any material fact asserted therein, then they would be hearsay and might not come within the Rule. They were not. Neither a hearsay nor a confrontation question arises when evidence has been admitted solely for the purpose of proving that certain words were spoken. *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). It is next to impossible to question whether recorded words were spoken. Other questions, such as their meaning, who was speaking, and when and why the words were spoken, are all subject to other proof. Generally, one cannot confront and cross-examine a tape recorder. All of the voices were identified by Cindy Martin. Her voice was one of those recorded. She also testified concerning when and why the words were spoken and, together with detective Bustamante, explained the meaning of some of the words. She was confronted and cross-examined. Under these facts we find no fundamental error in the admission of the tapes.

■ We believe we should address the appellant's argument that the tapes are inadmissible under *State v. Speerschneider,* 25 Ariz.App. 340, 543 P.2d 461 (1975). Initially, we note that *Speerschneider* was decided prior to the adoption of the Arizona Rules of Evidence in 1977. We next note as more important to our analysis here that *Speerschneider* involved the responses to two questions asked by an undercover narcotics officer. The conspirator told the officer that his "connection" was John and his phone number was 266–1101. This evidence was offered to prove that John Speerschneider was the connection. We believe

for this reason the reliability analysis in *Speerschneider* was made. *Speerschneider* does not hold that statements of co-conspirators are inadmissible unless the declarant is available to testify. It does hold that given those circumstances the court must determine whether other indicia of reliability are present before admitting co-conspirator statements. As we have indicated, we believe this qualification of Rule 801(d)(2)(E), Arizona Rules of Evidence, 17A A.R.S., applies only when the statements are truly hearsay. *See Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980).

■ The four conversations on September 19 referred to an object of the conspiracy, the re-sale to Anderson. He was apparently complaining about the quality of the cocaine. We believe these conversations were in furtherance of the conspiracy, and there was no error in their admission. *See State v. Darby,* 123 Ariz. 368, 599 P.2d 821 (App.1979). *See also State v. Lockner,* 20 Ariz.App. 367, 513 P.2d 374 (1973); *State v. Gretzler,* 126 Ariz. 60, 612 P.2d 1023 (1980).

■ There is also no merit in the appellant's argument that no evidence independent of the co-conspirator's statements shows .the conspiracy. The testimony of Cindy Martin established the conspiracy. It does not matter that she testified after the tapes were admitted. Independent proof of the conspiracy can be shown after the statements are admitted. *State v. Ferrari, supra.* The trial judge has discretion in the order of proof. The appellant specifically argues that no evidence other than that on the tapes shows that Anderson was involved. Yet taped conversations with him were admitted. This is not unusual, nor does it mean the admission of the tapes was error. What Anderson said about buying the cocaine was not offered for the truth of the words spoken but rather to prove that the words *were spoken.* The words had independent legal significance. M. Udall & J. Livermore, Law of Evidence, § 122 (1982).

■ The instruction properly informed the jury of one facet of the law of conspiracy and was not objectionable. The instruction was:

"A person may be guilty of conspiracy, even though he has a limited knowledge as to the scope of the conspiracy and no knowledge or details of the plan of operation in furtherance thereof, or the membership in the conspiracy or part played by each member and division of the spoils. However to sustain a conviction the defendant must know the general purpose of the conspiracy."

*See United States v. Knight,* 416 F.2d 1181 (9th Cir.1969); *Miller v. United States,* 382 F.2d 583 (9th Cir.1967), cert. denied, 390 U.S. 984, 88 S.Ct. 1108, 19 L.Ed.2d 1285 (1968), reh'g denied, 391 U.S. 971, 88 S.Ct. 2037, 20 L.Ed.2d 1378 (1968).

■ From what we have already said it is obvious that the evidence was sufficient to support the convictions. The only arguable question is whether the substance involved was actually cocaine. None of the substance involved was seized and therefore there were no chemical tests. The nature of the drug was shown only through circumstantial evidence. We believe this is sufficient. The record shows that cocaine was the narcotic to be furnished, co-conspirator Lowe paid $2,300 an ounce for it, the purchaser, Anderson, complained of its quality but not whether it was or was not cocaine, and he used it.

■ The expert testimony interpreting the drug language was properly admitted. It assisted the jury in understanding the evidence. *See State v. Salazar,* 27 Ariz. App. 620, 557 P.2d 552 (1976); *State v. Williams,* 132 Ariz. 153, 644 P.2d 889 (1982).

Affirmed.

HOWARD, C.J., and HATHAWAY, J., concur.