THOMPSON, Judge,
dissenting.
Because I do not agree that the evidence was legally sufficient to sustain convictions for loitering and prowling and for resisting *196 arrest without violence, I respectfully dissent.
During the course of a three or four-hour period beginning about 7:30 p.m., the manager of a freestanding 24-hour drugstore observed L.K.B. and another male remain near the pay telephone attached to the outside wall of the store. The manager called the police to have them removed. The responding police officer had seen two black males “hanging out” near the store on three different occasions when he passed the store on patrol, and “was going to go by there anyway probably and say hello and see what was going on.” When he pulled into the parking lot in response to the call, the male with L.K.B. “started being pretty aggressive and started running his mouth_” Within seconds, the officer testified, individuals who had been across the street at a motel ran to the scene and began yelling. Three or four other officers arrived. After the crowd was subdued, the responding officer turned to L.K.B., stating that he needed identification from him, and that he had “just got a trespassing from the property, that’s what the management wanted.” L.K.B. laughed and ran off, refusing to provide identification. The officer ordered him to stop and then chased him on foot.
To prove a charge of loitering and prowling under section 856.021, the state must show (1) that the defendant loitered in a place, at a time, or in a manner not usual for law-abiding individuals, and, (2) that the loitering and prowling were under circumstances that warranted a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity. State v. Ecker, 311 So.2d 104, 106 (Fla.), cert. denied, 423 U.S. 1019, 96 S.Ct. 455, 46 L.Ed.2d 391 (1975). As to the first element, it must be established that the defendant engaged in incipient criminal behavior in which law-abiding people do not usually engage due to the time, place, or manner of the conduct involved. D.A. v. State, 471 So.2d 147, 150 (Fla. 3d DCA 1985) (citing Model Penal Code § 150.6 comment at 388-91 (1980)). The purpose of the statute is to punish a certain type of incipient criminal behavior before it ripens into the commission or attempted commission of a substantive criminal act, id. at 151, but it is not directed at non-aberrant, harmless behavior which evinces no threat of immediate future criminal activity, id.. The gist of the first element is aberrant and suspicious criminal conduct which comes close to, but falls short of, the actual commission or attempted commission of a substantive crime. Id. The second element is established by a showing that the unusual or incipient criminal behavior threatens the safety of persons or property in the immediate area and amounts to an imminent breach of the peace or an imminent threat to public safety. Id. at 152.
In the instant case neither element has been satisfied. The evidence that L.K.B.’s behavior was unusual for a law-abiding citizen is marginal, and any concern for the safety of persons or property in the immediate vicinity was speculative at best. See Woody v. State, 581 So.2d 966 (Fla. 2d DCA 1991) (conviction reversed where group of males in residential area known for drug activity scattered at approach of police and defendant hid under bush). The fact that a person idles near an open business is insufficient to sustain a conviction for loitering and prowling. . See State v. Freeman, 542 So.2d 483 (Fla. 2d DCA 1989) (defendant could not be arrested for loitering and prowling where he was standing with group on street comer adjacent to grocery store and group dispersed on approach of police officers); T.L.F. v. State, 536 So.2d 371 (Fla. 2d DCA 1988) (no probable cause where police observed defendant standing at rear of building during business hours and where defendant refused to identify himself or explain his presence); C.V.H. v. State, 557 So.2d 927 (Fla. 5th DCA 1990) (conviction reversed where defendant had been observed for two minutes in parking lot adjacent to store and fled on approach of police). In the instant case, L.K.B.’s presence for several hours near the telephone outside the open business in full view of any customer or passerby, including a police officer on patrol, did not point to incipient criminal behavior, so the finding of guilt cannot be sustained.
I note further that section 856.021 reaches the outer limits of constitutionality and that *197 it should not be used as a “catchall” to detain and charge citizens when there is an insufficient basis to sustain a conviction on some other charge, D.A., 471 So.2d at 153, or to alleviate social problems, C.V.H., 557 So.2d at 929. I also take exception to statements by the majority that L.K.B. was “harass[ing] the patrons of a private business for some four hours” and that he was “terrorizing store customers”. If the record supported those allegations, certainly L.K.B. could have been arrested. The record only shows that L.K.B. and his companion were loud and boisterous and used profanities in a place where the public was invited. There is absolutely no showing in the record that the two boys spoke to or even looked at any patron, and there is certainly no support for the majority’s remarkable contention that L.K.B. and his companion were “terrorizing” or “harass[ing]” any patrons. The fact that two patrons were displeased or upset by the behavior of the two boys does not lead to the conclusion that they were engaged in incipient criminal behavior. Furthermore, neither the fact that this court elects to use the terms “harass” and “terrorize,” nor the fact that the store manager used the term “ordeal,” nor the fact that the store manager elected to dial the police emergency number (after three or four hours), transforms rudeness into criminality.
The evidence was also insufficient to prove a violation of section 843.02. To support a conviction under section 843.02 the state must show (1) that the officer was engaged in the lawful execution of a legal duty, and, (2) the action of the defendant constituted obstruction of or resistance to that legal duty. S.G.K. v. State, 657 So.2d 1246 (Fla. 1st DCA 1995). Convictions for violations of the statute have been upheld where a defendant resisted a probable cause arrest or a Terry stop.[1] See, e.g., Perry v. State, 593 So.2d 1165 (Fla. 1st DCA 1992); Johnson v. State, 433 So.2d 648 (Fla. 2d DCA 1983). Convictions have been upheld where the defendant’s conduct physically impedes an officer in the performance of legal duties. See Wilkerson v. State, 556 So.2d 453 (Fla. 1st DCA) rev. denied, 564 So.2d 1088 (Fla.1990)(defendant refused to leave area where arrests were being made); M.M. v. State, 674 So.2d 883 (Fla. 2d DCA 1996) (despite warning defendant continued to approach officer who was struggling with suspected trespasser). Convictions also have been upheld where persons lawfully arrested give a false name. See Rumph v. State, 544 So.2d 1150 (Fla. 5th DCA 1989).
A defendant cannot be convicted of resisting a Terry stop unless the officer had an articulable suspicion that the defendant had committed, was committing, or was about to commit an offense. See, e.g., C.K. v. State, 487 So.2d 93 (Fla. 3d DCA 1986). Here, although the police officer speculated that L.K.B. might rob the store or its customers (not a smart move for someone who had been calling attention to himself for three or four hours), and although he thought the motel occupants might have been using the drugstore telephone to further the illegal drug activity in which he surmised the occupants were engaged, nothing in L.K.B.’s behavior provided an articulable suspicion that he had committed, was committing, or was about to commit a crime. Certainly, the responding police officer was not concerned: while on patrol he decided he “was going to go by there probably and say hello....” Even Robillard, the manager of the store, testified that L.K.B.’s behavior did not cause him to be concerned for the store’s safety or the customers’ safety.
Robillard was concerned only about the profitability of his business and he asked the police to give L.K.B. “a trespass warning” because he did not want his customers (whose subjective fear or concern does not translate to an articulable suspicion) upset or scared away from the store. See Section 810.09, Florida Statute (1995).[2] Section 810.09 does not require the detention of *198 L.K.B. for the notice to be given. It could have been posted or Robillard or the officer could have told L.K.B. to leave and not come back to the store, and that if he returned, he could be arrested. Pointec v. State, 614 So.2d 570, 573 (Fla. 5th DCA 1993). There is no statutory requirement that L.K.B. produce identification. The statute only requires that L.K.B. receive actual communication. L.D.L. v. State, 569 So.2d 1310 (Fla. 1st DCA 1990).
Because the officer lacked grounds to detain L.K.B., the finding of guilt cannot be sustained on the basis that he resisted lawful arrest or detention. Further, the finding cannot be sustained on the ground that he impeded the officer by refusing to remain and/or to identify himself, because he was under no obligation to do either. The extent of the officer’s function was to issue a trespass warning. See In the Interest of B.M., 553 So.2d 714 (Fla. 4th DCA 1989). See also S.G.K.; Harris v. State, 647 So.2d 206 (Fla. 1st DCA 1994); Breedlove v. State, 605 So.2d 589 (Fla. 4th DCA 1992); F.B. v. State, 605 So.2d 578 (Fla. 3d DCA 1992); Robinson v. State, 550 So.2d 1186 (Fla. 5th DCA 1989); Steele v. State, 537 So.2d 711 (Fla. 5th DCA 1989); Burgess v. State, 313 So.2d 479 (Fla. 2d DCA 1975), certified question denied, 326 So.2d 441 (Fla.1976).
Perhaps this case is more about social mores than law. It is not unusual today to see young boys and girls remain for long periods of time at malls and other public places. Some dress differently: some wear drooped trousers -to display underwear, and others sport body-piercing jewelry. The fact that they may be different, loud, and profane, however, cannot be the basis of an arrest for loitering and prowling. Nor can it be the basis for a Terry stop, as the majority holds, based on the suspicion that an assault was about to take place — unless “assaulting the sensibilities” of another is now a crime.
GRIFFIN, C. J., and DAUKSCH, J., concur.

. See Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

. § 810.09 Trespass on property other than structure or conveyance.—
(1) Whoever, without being authorized, licensed, or invited, willfully enters upon or remains in any property other than a structure or conveyance as to which notice against entering or remaining is given, either by actual communication to the offender or by posting, fencing, or cultivation as described in s. *198 810.011, commits the offense of trespass on property other than a structure or conveyance.