260 P.3d 309

**STATE of Arizona, Appellee,**

v.

**Arnulfo FLORES, Appellant.**

**No. 1 CA–CR 10–0684.**

Court of Appeals of Arizona, Division 1, Department C.

July 26, 2011.

Thomas C. Horne, Arizona Attorney General By Kent E. Cattani, Chief Counsel, Criminal Appeals/Capital Litigation Section, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender By Stephen R. Collins, Deputy Public Defender, Phoenix, Attorney for Appellant.

## MEMORANDUM DECISION

KESSLER, Judge.

¶ 1 This appeal was filed in accordance with *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), following Arnulfo Flores's ("Flores") conviction of resisting arrest, a class one misdemeanor. Finding no arguable issues to raise, counsel requested that this Court search the record for fundamental error. Flores was given the opportunity to file a *pro per* supplemental brief, but did not file one.

¶ 2 After reviewing the entire record, we conclude the evidence is sufficient to support the verdict and there is no reversible error. Therefore, we affirm Flores's conviction and sentence.

### FACTUAL AND PROCEDURAL HISTORY

¶ 3 We view the facts in the light most favorable to sustaining the conviction. *See State v. Guerra*, 161 Ariz. 289, 293, 778 P.2d 1185, 1189 (1989).

¶ 4 Flores was charged with resisting arrest in connection with his actions on January 2 and 3, 2010. On January 2, Flores was posting yard sale signs in his neighborhood when Officer R. stopped him. Officer R. explained to Flores that the signs violated city code and needed to be removed, and Flores appeared to be taking the signs down as Officer R. left. However, the following morning, Officer R. saw Flores's signs posted in the same location. He gathered the signs and went to the address written on them, intending to issue a civil citation.

¶ 5 Officer R. approached Flores's residence at approximately 6:40 a.m. Noticing the SUV he had seen the previous day, Officer R. decided to approach the house, and called for an additional officer. As Officer R. knocked on the door, Officer T. arrived and began a routine safety assessment of the yard. Rosa Flores, the appellant's wife, answered the door. When asked to get the driver of the SUV, Rosa brought her husband to the door. Officer R. showed the signs to Flores and told him to get his identification so that a citation could be issued.

Flores refused to get his ID, telling Officer R. to instead write the citation to the owner of the SUV. The SUV was in Rosa Flores's name, and Officer R. explained that he could not write her a ticket since he had not seen her placing the signs. Flores became visibly frustrated and upset, and again refused to give the officer his ID.

¶ 6 While checking the area, Officer T. noticed what appeared to be a gun in the center console of the minivan parked in the driveway of Flores's residence. He warned Officer R. of this fact, and the officers asked Flores if he had any weapons on his person. Flores responded, "No I don't have any fucking weapons on me. Why the fuck would I have any weapons on me?" To explain their suspicion, the officers showed him the weapon in the minivan. Flores laughed derisively and explained that it was a toy gun. At trial, Rosa and Janette Flores testified that Officer R. then became agitated, using "the F word" and kicking over the cardboard boxes of yard sale items.

¶ 7 The officers asked if there were any weapons in the house, to which Flores aggressively retorted, "I have a whole bunch of fucking weapons. Don't you?" Officer R. asked for Flores's ID a third time, but Flores turned and walked quickly toward his house, telling the officers they were trespassing on his land. He went inside the house and the officers followed, now intending to arrest Flores for refusing to produce his ID. The officers also had some concern that Flores would retrieve one of the weapons he claimed to have in the house, so Officer T. called for additional units.

¶ 8 Once inside the house, the officers attempted to restrain Flores in the dining room area. Flores broke away from them and headed down the hallway toward a bedroom, yelling for "Bill," the owner of the house. While in the hallway, the officers stopped Flores by grabbing the hood of his sweatshirt. Flores turned around and assumed an "aggressive stance." He swung an arm in the officers' direction, but did not hit either officer. This arm movement allowed the officers to take hold of Flores's arm, turn him around, and move him out of the house.

¶ 9 During the commotion, members of Flores's family gathered in the common dining area of the house. For this reason, the officers thought it best to remove Flores from the house. The officers walked Flores out of the house, each holding one of his arms with both of their hands to constrain him. Flores continued to yell and struggle with the officers as he was removed from the house. Both officers sustained minor injuries during the struggle. Flores sustained no visible injuries.

¶ 10 Flores was charged with resisting arrest, a class 6 felony. To reduce the charge to a misdemeanor, Flores waived his right to a jury trial. The court convicted him of misdemeanor resisting arrest, in violation of Arizona Revised Statutes ("A.R.S.") section 13–2508 (2010), and sentenced him to twelve months unsupervised probation and an anger management program.

¶ 11 Flores timely appealed. *See* Ariz. R.Crim. P. Rule 31.3. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution, as well as A.R.S. §§ 12–120.21(A)(1) (2003), 13–4031 (2001), and –4033(A)(1) (2010).

## DISCUSSION

### I. Standard of Review

¶ 12 Since this is an *Anders* appeal, no issues were preserved, so this Court has reviewed the entire record for fundamental error. *State v. Barraza*, 209 Ariz. 441, 447, ¶ 19, 104 P.3d 172, 178 (App.2005). Fundamental error is " 'error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial.' " *State v. Henderson*, 210 Ariz. 561,

567, ¶ 19, 115 P.3d 601, 607 (2005) (quoting *State v. Hunter*, 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984)). To obtain reversal, the defendant must also show the fundamental error prejudiced him. *Henderson*, 210 Ariz. at 567, ¶ 20, 115 P.3d at 607. On review, we view the facts in the light most favorable to sustaining the trial court's verdict and resolve all inferences against the appellant. *State v. Fontes*, 195 Ariz. 229, 230, ¶ 2, 986 P.2d 897, 898 (App.1998) (citation omitted).

¶ 13 Flores's conviction for resisting arrest requires proof that the defendant (1) intentionally prevented or attempted to prevent, (2) a person reasonably known to him to be a peace officer, (3) acting under color of official authority, (4) from effecting an arrest[1] (5) using or threatening to use physical force. A.R.S. § 13–2508(A) (2008). Here, the evidence is sufficient to prove each element beyond a reasonable doubt. The only issues which merit discussion are whether the police applied unreasonable force or unlawfully entered Flores's residence.

### II. Limits on the Right to Resist Arrest

¶ 14 Arizona originally followed the common law, which gave a person the right to physically resist unlawful arrest. *Dugan v. State*, 54 Ariz. 247, 250, 94 P.2d 873, 874 (1939) (holding that the right to resist unlawful arrest extends up to the point of "killing the arresting officer"). However, since the 1970's, Arizona courts have limited this right. *See State v. Hatton*, 116 Ariz. 142, 148, 568 P.2d 1040, 1046 (1977) (holding that given a "blanket right to resist unlawful arrest," "violence is not only invited but can be expected"); *State v. Lockner*, 20 Ariz.App. 367, 371, 513 P.2d 374, 378 (1973) (holding that the "interest of the individual must give way to the interest of the public and the individual

1. An "arrest" as defined by Arizona law requires only the physical restraint of a defendant and is complete when the officers have completely curtailed the defendant's freedom of movement. *State v. Cole*, 172 Ariz. 590, 590, 838 P.2d 1351, 1351 (App.1992). *Accord. State v. Durham* 108 Ariz. 233, 234–35, 495 P.2d 463, 464–65 (1972). The law requires only that a reasonable person would know that he was under arrest, not that the arresting officer tell the defendant, "you are under arrest." *Cole*, 172 Ariz. at 590, 838 P.2d at 1351. Furthermore, the act of "effecting ar-

rest," for the purposes of the resisting arrest statute, is on-going beginning with the officer's first physical contact and continuing even after the arrest may be "complete" under the law. *State v. Mitchell*, 204 Ariz. 216, 219–20, ¶ 19, 62 P.3d 616, 619–20 (App.2003). The record shows that it was reasonably apparent to the defendant that he was being arrested, and the defendant was within the physical custody of the officers when he began to resist, fulfilling the meaning of "arrest" under the statute.

may seek his remedy following the arrest"). This trend culminated in the 1977 passing of A.R.S. § 13–404(B), which limited the right to resist arrest. *State v. Snodgrass,* 117 Ariz. 107, 115 n. 2, 570 P.2d 1280, 1288 n. 2 (1977). Under A.R.S. § 13–404(B), one may resist arrest only when "the physical force used by the peace officer exceeds that allowed by law." A.R.S. § 13–404(B) (2010) [2].

¶ 15 This standard has also been applied in federal courts. The Ninth Circuit limits the "right to offer reasonable resistance" to those situations involving an officer's "bad faith, unreasonable force, or provocative conduct." *United States v. Span,* 970 F.2d 573, 579 (1992) (quoting *United States v. Moore,* 483 F.2d 1361, 1365 (1973)). The court further stated that the right to resist was not triggered by any absence of probable cause or the unlawful nature of the arrest, but by the officer's conduct. *Span,* 970 F.2d at 579. Thus, the Ninth Circuit has held that there is no right to resist arrest simply because the arrest is unlawful. *Id.*

▮ ¶ 16 A.R.S § 13–409 (2011) dictates the appropriate amount of force which may be applied by an officer during an arrest. The statute requires that a reasonable person would believe the arrest to be lawful and that the force used must seem immediately necessary to effect arrest. A.R.S. § 13–409 (2011).[3] Physical force in resisting arrest is only permitted when the court can find "no hypothesis whatever [to provide] sufficient evidence to support" the trial court's conclusion that the officer acted reasonably in physically restraining a person. *State v. Yoshida,* 195 Ariz. 183, 186, ¶ 13, 986 P.2d 216, 219 (App.1998) (quoting *State v. Arredondo,* 155 Ariz. 314, 316, 746 P.2d 484, 486 (1987)). In other words, if there is minimal evidence

presented to the trial court that an officer acted reasonably, no resistance is permitted.

¶ 17 The record includes significant evidence that the officers acted reasonably and responded with appropriate and immediately necessary force. Flores had refused to produce his ID despite being asked for it three times, giving the officers cause to arrest him. The record further indicates that Flores told officers he had many weapons in the house, then turned and walked quickly into the house. This action gave the officers reasonable belief that Flores might be retrieving a weapon, so they took the necessary action of restraining Flores in order to ensure their own safety. The evidence also shows that the officers sustained injuries during the ensuing struggle. However, Flores remained unharmed, which suggests that the officers used a minimal amount of force in arresting him. Therefore, since the force exerted by police was within the law, whether the arrest was initially lawful or unlawful is irrelevant and resistance to the arrest was not permitted.

### III. Lawful Entry into Residence

▮ ¶ 18 A second issue meriting discussion is whether the officers were justified in entering Flores's home without an arrest warrant. The Fourth Amendment protects against unlawful entry into homes, and the Arizona Constitution provides an even stricter guideline. *State v. Martin,* 139 Ariz. 466, 473, 679 P.2d 489, 496 (1984). Arizona law prevents officers from "mak[ing] a warrantless entry into a home in the absence of exigent circumstances or other necessity." *State v. Ault,* 150 Ariz. 459, 463, 724 P.2d 545, 549 (1986). Exigent circumstances include response to an emergency, hot pursuit, destruction of evidence, and possibility .of

---

2. We cite to the current version of the statute because no revisions material to this decision have since occurred.

3. A.R.S. § 13–409 reads:
   A person is justified in threatening or using physical force against another if in making or assisting in making an arrest or detention or in preventing or assisting in preventing the escape after arrest or detention of that other person, such person uses or threatens to use physical force and all of the following exist:

1. A reasonable person would believe that such force is immediately necessary to effect the arrest or detention or prevent the escape.
2. Such person makes known the purpose of the arrest or detention or believes that it is otherwise known or cannot reasonably be made known to the person to be arrested or detained.
3. A reasonable person would believe the arrest or detention to be lawful.

violence. *State v. Cook,* 115 Ariz. 188, 193, 564 P.2d 877, 882 (1977) (citing *Vale v. Louisiana,* 399 U.S. 30, 35, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970)). Officers testified that Flores walked quickly into his home soon after revealing, in an angry and aggressive tone, that he had weapons inside his house. The record supports that the officers had reason to believe Flores intended to use one of his weapons. Therefore, exigent circumstances existed due to the possibility of violence, and the officers acted appropriately and lawfully in entering his home to stop him from getting a weapon.

¶ 19 We therefore hold that because the officers acted appropriately and reasonably in the arrest, there was no fundamental error, and Flores's resistance was not permissible under the law.

## CONCLUSION

¶ 20 After reviewing the record we find no grounds for reversal of Flores's conviction. The record reflects that Flores had a fair trial, was present and represented by counsel at all critical stages prior to and during trial, as well as during the verdict and at sentencing. The evidence is sufficient to support the verdict and the trial court imposed a proper sentence for Flores's offense.

¶ 21 We affirm Flores's conviction and sentence. Upon the filing of this decision, Flores's counsel shall inform him of the appeal's status and his future options. *State v. Shattuck,* 140 Ariz. 582, 584–85, 684 P.2d 154, 156–57 (1984). On the court's own motion, Flores shall have thirty days from the date of this decision to file a *pro per* motion for reconsideration or petition the Arizona Supreme Court for review. *See id.*

CONCURRING: PATRICIA A. OROZCO, Presiding Judge and MICHAEL J. BROWN, Judge.