NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee,*

*v.*

ANDREW VINCENT CHESSON, *Appellant.*

No. 1 CA-CR 15-0604
FILED 6-30-2016

---

Appeal from the Superior Court in Maricopa County
No. CR2014-000933-001
The Honorable Virginia L. Richter, Judge *Pro Tempore*

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Kathryn L. Petroff
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Andrew W. Gould joined.

---

H O W E, Judge:

¶1    This appeal is filed in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969). Counsel for Andrew Vincent Chesson asks this Court to search the record for fundamental error. Chesson was given an opportunity to file a supplemental brief in propria persona. He has not done so. After reviewing the record, we affirm Chesson's conviction and sentence for robbery.

## FACTS AND PROCEDURAL HISTORY

¶2    We view the facts in the light most favorable to sustaining the trial court's judgment and resolve all reasonable inferences against Chesson. *State v. Fontes*, 195 Ariz. 229, 230 ¶ 2, 986 P.2d 897, 898 (App. 1998).

¶3    On October 30, 2013, Rick[1] stepped off a public bus and started walking home. It was a little after noon, and he was carrying toys and food he had just purchased. As he was walking, he noticed a man—later identified as Chesson—following him. Chesson was "close behind" and "keeping up, but staying back." Chesson started asking Rick questions, including "are those expensive gifts?" and "are they for Christmas?" Rick ignored Chesson and increased his pace; Chesson lagged back a bit, but then sped up and asked him another question.

¶4    Rick eventually stopped underneath a tree for Chesson to pass him, but Chesson also stopped walking and started talking on his phone. Consequently, Rick started walking again, but before he knew it, Chesson had hit him on the side of his head. Rick fell onto a brick planter and hurt his back, cut his pants, and scraped his knee and arm. Chesson ordered Rick to hand over his wallet; Rick complied. Inside was $80, a $15 gift card, an identification card, a credit card, and a debit card. Chesson

---

[1]   We use the victim's first name to protect his privacy. *See State v. Maldonado*, 206 Ariz. 339, 341 ¶ 2 n.1, 78 P.3d 1060, 1062 n.1 (App. 2003).

grabbed Rick's wallet and grocery bags and ran towards a truck, getting into the front passenger side.

¶5            Rick got up and hobbled after Chesson, calling 911 as he did so. Rick continued talking to the police operator as he hobbled toward the truck. He gave a description of Chesson and the truck and the truck's license plate number. The police arrived soon after, and later that day, Rick met with a detective. He was shown a photo lineup of six people and identified one of the individuals as Chesson, the man who took his grocery bags and wallet.

¶6            Police ran the license plate and went to visit Chesson's mother later that day. She told an officer that she gave the truck to her son, Chesson's brother. Although Chesson's brother normally drove the truck, earlier that day, he had switched cars with his sister-in-law, Chesson's wife.

¶7            The police went to Chesson's house, where he, his wife, her sister, and her sister's husband and kids were living. After getting consent, the police searched the truck and found Rick's wallet and some receipts. One receipt dated October 30 was from a recycling business made out to Chesson's brother-in-law for recycling cardboard. Two other receipts also dated October 30 and timestamped 3:51 p.m. and 2:33 p.m. were for electricity prepayments made in the name of Chesson's landlord.

¶8            Chesson was arrested, and the detective who showed Rick the six-person photo lineup interviewed him. After being read his *Miranda*[2] rights and agreeing to answer questions, Chesson said that he was not with the truck that day and that he was home all day. He also told the detective that he never went anywhere and that he never robbed anyone. When the detective told Chesson that he knew that Chesson had gone somewhere that day, Chesson repeatedly stated that he was home all day. After unsuccessfully trying to get Chesson to provide more information, the detective stopped the interview because "[Chesson's] story was not going to change no matter how much [he] continuously kept telling [Chesson] that [he] knew [Chesson] was not at home."

¶9            The State charged Chesson with one count of robbery. The State also alleged that Chesson had four historical and two non-historical prior felony convictions. The State alleged six aggravating circumstances, including amount taken sufficient to be an aggravating circumstance, presence of an accomplice, committed in expectation of something of

---

2            *Miranda v. Arizona*, 384 U.S. 436 (1966).

pecuniary value, physical, emotional, or financial harm to the victim, lying in wait of or ambushing the victim, and Chesson was on parole.

¶10     At trial, Rick identified Chesson as the man who took his wallet and grocery bags. The recycling business' general manager testified that he provided the police with a surveillance video, showing two men obtaining the recycling receipt at 12:20 p.m. on October 30. After the State rested its case-in-chief, Chesson moved for judgment of acquittal pursuant to Arizona Rule of Criminal Procedure 20, arguing that insufficient evidence supported a finding that Chesson committed the robbery. Finding otherwise, the court denied the motion.

¶11     Chesson's brother-in-law testified that the two men in the surveillance video were him and Chesson. He explained that he and Chesson were collecting cardboard for four hours that morning and ultimately went to recycle it, as the receipt showed. Chesson's brother-in-law also explained that they had to collect and recycle the cardboard by 12:45 p.m. because Chesson had to pick up his daughter from school.

¶12     Chesson's wife testified that she and Chesson were home on October 30 and that they both dropped off their daughter at 8 a.m. at school and picked her up at 12:40 p.m. Chesson's wife also testified that after picking up their daughter, the Chessons went to prepay their electricity, as the electricity receipts indicated, and then went grocery shopping. Chesson's wife further testified that when the police came to her house on October 30, she mistakenly told them that she went to pick up her daughter at 3:40 p.m. and that Chesson was home all day. On rebuttal, the police officer who had interviewed Chesson's wife testified that she told him that Chesson was home all day. The officer explained that Chesson's wife stated that she dropped her daughter at school in the morning, went back home, and then went grocery shopping at 3:30 p.m.

¶13     The jurors found Chesson guilty of robbery. During the aggravation phase, Chesson's parole officer identified Chesson and testified that he was on parole on October 30. The jurors found the six aggravating circumstances the State had alleged.

¶14     The trial court conducted the sentencing hearing in compliance with Chesson's constitutional rights and Arizona Rule of Criminal Procedure 26, and Chesson admitted to two prior felony convictions. The court found as mitigating factors that Chesson had strong family support and that his earlier substance abuse may have contributed to his poor decision-making. The court sentenced Chesson to an aggravated

term of 12 years' imprisonment with 102 days of presentence incarceration credit.

## DISCUSSION

**¶15**       We review Chesson's conviction and sentence for fundamental error. *See State v. Flores*, 227 Ariz. 509, 512 ¶ 12, 260 P.3d 309, 312 (App. 2011). Counsel for Chesson has advised this Court that after a diligent search of the entire record, counsel has found no arguable question of law. We have read and considered counsel's brief and fully reviewed the record for reversible error, *see Leon*, 104 Ariz. at 300, 451 P.2d at 881, and find none. All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. So far as the record reveals, Chesson was represented by counsel at all stages of the proceedings, and the sentence imposed was within the statutory guidelines. We decline to order briefing and affirm Chesson's conviction and sentence.

**¶16**       Upon the filing of this decision, defense counsel shall inform Chesson of the status of his appeal and of his future options. Counsel has no further obligations unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584–85, 684 P.2d 154, 156–57 (1984). Chesson shall have 30 days from the date of this decision to proceed, if he desires, with a pro per motion for reconsideration or petition for review.

## CONCLUSION

**¶17**       For the foregoing reasons, we affirm.



Ruth A. Willingham · Clerk of the Court
FILED: AA