NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

KESRICK T. INGRAM, *Appellant*.

No. 1 CA-CR 17-0114
FILED 5-31-2018

Appeal from the Superior Court in Maricopa County
No. CR2016-111358-001 DT
The Honorable Erin Otis, Judge

**AFFIRMED AS CORRECTED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Jeffrey L. Force
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Randall M. Howe joined.

_____

**C R U Z**, Judge:

¶1             This appeal is filed in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969).  Counsel for Kesrick T. Ingram has advised this Court that counsel found no arguable questions of law and asks us to search the record for fundamental error.  Ingram was convicted of aggravated assault, assault, trespassing, and disorderly conduct.  Ingram was given an opportunity to file a supplemental brief *in propria persona*; he has not done so.  After reviewing the record, we affirm Ingram's convictions and sentences, but correct the sentencing minute entry on count four to indicate six months' jail-time.

**FACTUAL AND PROCEDURAL HISTORY**

¶2             We view the facts in the light most favorable to sustaining the judgment and resolve all reasonable inferences against Ingram.  *See State v. Fontes*, 195 Ariz. 229, 230, ¶ 2 (App. 1998).

¶3             On December 27, 2015, K.H. called police to report that her boyfriend, Ingram, had physically assaulted her and beat her.  K.H. told police that Ingram had placed his hands on her.  Police reported that K.H. told them Ingram was angry because K.H. refused to have sex with him and that Ingram had choked K.H. in her apartment as she slept with her young child.   Ingram left K.H.'s apartment before police arrived, but later returned.  After he returned, Ingram verbally assaulted K.H. and attempted to get through her door, prompting officers to arrest Ingram for trespassing and disorderly conduct.

¶4             K.H. was taken to Glendale Family Advocacy Center for a forensic examination.  K.H. told the examining nurse that Ingram beat her and choked her.  The nurse noted bruising and marks consistent with K.H.'s allegation that Ingram assaulted her.  Four months later, K.H. called police and recanted her story.

¶5             On March 14, 2016, Ingram was charged with the following counts: count one, aggravated assault, a Class 4 felony; count two, assault,

a Class 1 misdemeanor; count three, criminal trespass, a Class 3 misdemeanor; and count four, disorderly conduct, a Class 1 misdemeanor. K.H. appeared at one of Ingram's pretrial hearings and asked that the court remove his electronic monitoring device as he was innocent. Ingram was indicted by grand jury on April 29, 2016. Counts one and two included domestic violence, and were alleged to be violent crimes. The state also alleged Ingram committed prior offenses in New York, but did not pursue them due to lack of proof. The state alleged aggravating factors that Ingram's crimes caused physical and emotional harm to the victim and were committed in the presence of a child. Ingram declined a plea agreement, and although he later participated in a settlement conference on June 16, 2016, no agreement was reached.

¶6        A four-day trial commenced on October 31, 2016. K.H. testified she had been in a relationship with Ingram on December 27, 2015, and recalled telling police that Ingram choked her. K.H. recalled seeing a forensic nurse, but refused to answer specific questions and otherwise stated she did not remember whether she made specific statements to police or the nurse. K.H. also testified that she could not recall calling police months later to recant her story or that she previously had told the court Ingram was innocent. Given K.H.'s difficulty answering direct questions and direct refusal to answer certain questions, the court found K.H. was feigning her memory loss.

¶7        Mr. Mangold, a retired clinical social worker and abuse counselor, testified regarding victim behavior in domestic violence. Mr. Mangold testified that victims of domestic violence sometimes recant previous admissions that violence occurred, due to romantic feelings towards the abuser, investment of time with the abuser, children in common, fear of future abuse, etc.

¶8        Officers Trieu and Hall testified they responded to the domestic violence call, and found K.H. gasping for air and crying, witnessed bruises, and K.H. told Officer Trieu she did not want Ingram back in her apartment. Officer Hall testified he contacted Ingram when he returned to the apartment, and Ingram admitted he and K.H. had an argument. Officer Hall testified that, after the officers informed Ingram that K.H. did not want him at her apartment, Ingram banged on the apartment door, attempted to enter, and yelled profanities. Officer Trieu corroborated that Ingram verbally abused K.H. and yelled profanities outside the apartment complex. Officer Hall then arrested Ingram for trespassing and disturbing the peace. Police body camera recordings captured the officers' interaction with K.H., supporting the officers' recollections of the incident.

¶9     The forensic nurse that examined K.H. testified to the general characteristics of strangulation, and her interaction with K.H.  The nurse testified that K.H. told her she fell asleep with her child, that Ingram grabbed her neck, pulled her out by her neck, shook her by her neck, dragged her by her hair, and wrestled her into her room.  K.H. told the nurse during the examination that she could not breathe, experienced a headache and vision problems, felt lightheaded, and had a sore neck.  The nurse found contusions on K.H.'s neck as well as small ruptured capillaries from increased pressure.

¶10    Officer Parkey testified that K.H. contacted police in April, and recanted her previous statements, claiming Ingram was innocent and that she was simply mad because Ingram had cheated on her.

¶11    Ingram moved for a directed verdict, which the court denied.  The jury returned guilty verdicts on all four counts, and found counts one through three involved domestic violence.

¶12    The trial court conducted the sentencing hearing in compliance with Ingram's constitutional rights and Arizona Rule of Criminal Procedure 26. The state did not pursue aggravating factors.  Ingram was sentenced to six months' jail-time and three years' supervised probation for count one, three years' probation for count two, one month's jail-time for count three, and six months' jail-time for count four, all sentences to be served concurrently.[1]  Ingram timely appealed.  We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution, and Arizona Revised Statutes sections 12-120.21, 13-4031, and -4033.

## DISCUSSION

¶13    We review Ingram's convictions and sentences for fundamental error.  *See State v. Flores*, 227 Ariz. 509, 512, ¶ 12 (App. 2011).  Counsel for Ingram has advised this Court that after a diligent search of the entire record, counsel has found no arguable question of law.  We have read and considered counsel's brief and fully reviewed the record for reversible error, *see Leon*, 104 Ariz. at 300, and find none.  All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure.  So

---

[1]    The court's minute entry ordered Ingram serve one month's jail-time for count four; the correct sentence was six months, as stated by the court at sentencing.  We therefore correct the court's minute entry to reflect six months.  *See State v. Stevens*, 173 Ariz. 494, 496 (App. 1992) (correcting the minute entry to reflect the court's oral pronouncement).

far as the record reveals, counsel represented Ingram at all stages of the proceedings, and the sentences imposed were within the statutory guidelines. We decline to order briefing and affirm Ingram's convictions and sentences.

**¶14** Upon the filing of this decision, defense counsel shall inform Ingram of the status of the appeal and of his future options. Counsel has no further obligations unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584-85 (1984). Ingram shall have thirty days from the date of this decision to proceed, if he desires, with a *pro per* motion for reconsideration or petition for review.

## CONCLUSION

**¶15** For the foregoing reasons, we affirm Ingram's convictions and sentences, but correct the court's minute entry to reflect six months' jail-time for count four.



AMY M. WOOD • Clerk of the Court
FILED: AA