NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

GABRIEL ROSS JARAMILLO, *Appellant.*

No. 1 CA-CR 19-0433
FILED 9-22-2020

Appeal from the Superior Court in Apache County
No. S0100CR201800244
The Honorable Timothy M. Wright, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

Patterson Law Firm, Saint Johns
By D. Bryce Patterson
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Paul J. McMurdie joined.

**C R U Z**, Judge:

¶1        This appeal is filed in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969). Counsel for Gabriel Ross Jaramillo has advised this Court that counsel has found no arguable questions of law and asks us to search the record for fundamental error. Jaramillo was convicted of first-degree murder, a Class 1 felony; burglary in the first degree, a Class 2 felony; abandonment or concealment of a dead body, a Class 5 felony; and tampering with physical evidence, a Class 6 felony. Jaramillo was given an opportunity to file a supplemental brief *in propria persona*; he has not done so. After reviewing the record, we affirm Jaramillo's convictions and sentences.

## FACTUAL AND PROCEDURAL HISTORY

¶2        We view the facts in the light most favorable to sustaining the convictions and resolve all reasonable inferences against Jaramillo. *See State v. Fontes*, 195 Ariz. 229, 230, ¶ 2 (App. 1998).

¶3        Victim S.L., a Tucson Electric Power Plant ("TEP") employee, worked a shift as scheduled on August 16, 2012. He called his mother the following morning, after his shift ended, and they spoke for approximately half an hour. Jaramillo claims he stayed at S.L.'s home the night of August 17 and slept in the guest bedroom. No one recalled seeing or speaking to S.L. after he spoke with his mother on August 17.

¶4        Three days later, S.L. missed a doctor's appointment without notice. The next day, Jaramillo's former girlfriend contacted a Springerville police officer and reported Jaramillo said that S.L. "disappeared" and threatened to make her disappear as well. Because the events took place in Eager, the Springerville officer contacted Eager police, who attempted to make contact with S.L. but were unsuccessful. The police learned S.L. had failed to show for work without notice, which was out of character for S.L.

¶5        In the days following S.L.'s failure to appear to work, police executed a search warrant at S.L.'s home, and they determined one of S.L.'s

vehicles—a white Toyota Tundra—was missing. Police found blood stains throughout the house and in S.L.'s bedroom, and a cadaver dog alerted to a scent of human remains outside the back door. A carpet cleaner near the front door of the home had blood and other "body matter" on it, as if the cleaner had been used. That evening, police received a report that a mushroom hunter found a body amid heavy brush near a Forest Service road on a mountain. The body had been bound at the ankles with an electric cord that police later determined had been cut from an appliance in S.L.'s home. A medical examiner later used dental records to identify the body as S.L. and determined he had died from two gunshot wounds to the head. Although unable to determine the exact time of death, the medical examiner testified the decomposition of the body suggested S.L. had died approximately a week before the body was found. Based on the blood stains and evidence suggesting that the body had been dragged through the house and the area behind S.L.'s home, police determined S.L. was killed in his bedroom.

¶6 On August 18, Jaramillo had called his former girlfriend from S.L.'s cell phone and asked her to pick him up. As they drove, Jaramillo made the "disappear" statements she later relayed to police. They drove to the San Francisco River in New Mexico, where Jaramillo broke S.L.'s cell phone into pieces and threw them into the water. The cell phone battery was later recovered by police from the same location. At some point that day, Jaramillo purchased a new cell phone from a Family Dollar store.

¶7 Two days after the New Mexico trip, Jaramillo's former girlfriend again picked him up and they drove to Show Low, where Jaramillo purchased new shoes from Wal-Mart and disposed of his old shoes in the trash. The following day, she found a handgun in the backseat of her vehicle where Jaramillo had been sitting; she then contacted police to turn over the gun and report the "disappear" comments Jaramillo had made. Police later determined the handgun belonged to S.L.

¶8 Shortly thereafter, Jaramillo drove S.L.'s white Toyota Tundra to Show Low to a coin store, where he sold numerous pieces of currency in exchange for $3,000. Jaramillo presented some coins the store owner was unable to immediately value, and they agreed Jaramillo would leave those coins at the shop and return later to collect the rest of the purchase price. Although Jaramillo told the shop owner he received the coins from his deceased brother, S.L.'s mother later identified the collection as one belonging to S.L. that was missing from his home.

¶9           On August 22, Jaramillo used his new cell phone to call TEP. He left a voicemail, posing as a doctor, and said S.L., his "client," had been "missing work" and he had "lung cancer and possibly colon cancer." Both S.L.'s doctor and the medical examiner disputed the alleged diagnoses of lung or colon cancer. Jaramillo admitted at trial that he made the phone call and left the voicemail using a false name.

¶10          Police used cell phone "pinging" technology in an attempt to locate Jaramillo's cell phone, and on August 25, an Eager police sergeant spotted S.L.'s white Toyota Tundra in the Globe-Miami area and called local authorities for assistance. He then recognized Jaramillo driving the truck. Jaramillo, who was alone in the truck, failed to stop, and led police on a high-speed pursuit. At one point, a pursuing officer witnessed the truck slow down and saw the door open briefly before regaining speed. The truck was later found abandoned. Four days later, police located Jaramillo near Roosevelt Lake and arrested him. Jaramillo had the new cell phone and $1,798.60 in cash from the coin shop sale with him when he was arrested.

¶11          A few days later, a Forest Service employee found the registration for the Toyota Tundra alongside the road between S.L.'s home and the place where his body was found. Two weeks later, a road crew discovered bedding, determined to be from S.L.'s home and stained with S.L.'s blood, in a culvert along the same road. Two months later, S.L.'s wallet was located along the side of the road where the officer saw Jaramillo slow down and open the door during the police pursuit. And in June 2015, children playing in the Little Colorado River found a .22 caliber rifle in the water under a bridge along the route between S.L.'s home and where the body was located. Through ballistic testing, police determined the rifle was the weapon used to murder S.L.

¶12          Jaramillo initially faced nine charges. Following a preliminary hearing, the superior court determined no probable cause supported the felony murder or armed robbery counts. The State also moved to dismiss the two charges for misconduct involving weapons, and during trial moved to dismiss the charge for theft of means of transportation. He pleaded not guilty and faced trial on the remaining four charges in May 2019.[1] Following the close of the State's evidence at trial,

---

[1]      The Honorable Timothy M. Wright, a visiting judge from Gila County, presided over the proceedings due to recusal by Apache County Presiding Judge Michael P. Latham.

Jaramillo moved for a judgment of acquittal as to all charges, except the first-degree murder count, under Arizona Rule of Criminal Procedure ("Rule") 20. The superior court denied the motion, reasoning that sufficient circumstantial evidence was offered for the jury to make a finding of guilt. The record supports this finding. First, the State offered testimony that S.L. was killed in his home, his body drug out of the house, and later transported to a mountain where it was eventually discarded. Jaramillo was found in possession of S.L.'s vehicle during the time S.L. was missing, and Jaramillo called S.L.'s place of employment pretending to be S.L.'s doctor and leaving a message that S.L. would not return to work due to an alleged cancer diagnosis. The State presented the recorded audio and a transcript of the TEP voicemail to the jury, and Jaramillo read the transcript aloud before the jury. Jaramillo later testified that he placed the call to TEP and left the voicemail. Second, there was substantial evidence found at S.L.'s home of efforts to clean the scene of the murder, including the use of a carpet cleaner found with blood and other body matter, as well as countless other disturbances. Third, the State presented testimony that S.L. owned a rare coin collection that went missing around the time of his murder. Jaramillo sold that same coin collection to a coin shop for an initial payment of $3,000 with additional monies expected after a more definitive determination of its value.

¶13 During trial, Jaramillo testified and admitted he had three prior felony convictions. After a thirteen-day trial, a twelve-person jury found him guilty of: first-degree murder, in violation of Arizona Revised Statutes ("A.R.S.") section 13-1105(A)(1); burglary in the first degree, in violation of A.R.S. § 13-1508(A); abandoning or concealing a dead body, in violation of A.R.S. § 13-2926(A); and tampering with physical evidence, in violation of A.R.S. § 13-2809(A)(1).

¶14 The superior court conducted the sentencing hearing in compliance with Jaramillo's constitutional rights and Rule 26. Jaramillo had the opportunity to address the court but did not do so. The court found Jaramillo's family support as a mitigating factor and found the following aggravating factors: extensive criminal history, offenses committed for pecuniary gain, harm to the victim, and emotional harm to the victim's family. As to the burglary charge, the court found intentional infliction of serious physical injury as an aggravator. Jaramillo was sentenced to natural life in the Arizona Department of Corrections for the first-degree murder charge, 17.75 years for the burglary charge, 7 years for the abandonment or concealment of a dead body charge, and 5.75 years for the tampering with

physical evidence charge.[2]  The court ordered the sentence for burglary to run concurrent with the sentence for murder, and ordered the sentences for abandonment or concealment and tampering to run concurrent to one another and consecutive to the sentences for murder and burglary.  He received 401 days of presentence incarceration credit for the murder and burglary charges.

## DISCUSSION

¶15        We review Jaramillo's convictions and sentences for fundamental error.  *See State v. Flores*, 227 Ariz. 509, 512, ¶ 12 (App. 2011).  Fundamental error goes "to the foundation of the case . . . that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial."  *State v. Hunter*, 142 Ariz. 88, 90 (1984).

¶16        Counsel for Jaramillo has advised this Court that after a diligent search of the entire record, counsel has found no arguable question of law.  We have read and considered counsel's brief and fully reviewed the appellate record for reversible error.  *See Leon*, 104 Ariz. at 300.  We find none.  All proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure.  This record shows counsel represented Jaramillo at all critical stages of the proceedings, and the sentences imposed were within the statutory guidelines.  We therefore affirm Jaramillo's convictions and sentences.

¶17        Upon the filing of this decision, defense counsel shall inform Jaramillo of the status of the appeal and of his future options.  Counsel has no further obligations unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review.  *See State v. Shattuck*, 140 Ariz. 582, 584-86 (1984).  Jaramillo shall have thirty days from the date of this decision to proceed, if he desires, with an *in propria persona* motion for reconsideration or petition for review.

---

[2]        The court found Jaramillo had committed the offenses while on pretrial release in another matter, which required the court to add two years to the imposed sentences.  A.R.S. § 13-708(D).

**CONCLUSION**

¶18     We affirm Jaramillo's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:     AA