NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

EDWARD VINCENT MARTINEZ, *Appellant*.

No. 1 CA-CR 21-0043
FILED 12-21-2021

Appeal from the Superior Court in Maricopa County
No. CR2017-150971-001
The Honorable Stephen M. Hopkins, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Linley Wilson
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Cory Engle
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge Jennifer M. Perkins joined.

---

**C R U Z**, Judge:

**¶1**         This appeal is filed in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969). Counsel for Edward Vincent Martinez has advised this Court that counsel found no arguable questions of law and asks us to search the record for fundamental error. Martinez was convicted of first degree murder. Martinez was given an opportunity to file a supplemental brief in *propria persona*; he has not done so. After reviewing the record, we affirm Martinez's conviction and sentence.

### FACTUAL AND PROCEDURAL HISTORY

**¶2**         We view the facts in the light most favorable to sustaining the conviction and resolve all reasonable inferences against Martinez. *See State v. Fontes*, 195 Ariz. 229, 230, ¶ 2 (App. 1998).

**¶3**         In November 2017, around five a.m., a man was driving to work when he observed what appeared to be a man and woman fighting by a bus stop. The man pulled into a CVS parking lot next to the bus stop, and he approached the two individuals, who would later be identified as A.M. and Martinez. The man saw Martinez repeatedly hitting A.M., and A.M. was bleeding. Martinez turned his attention towards the man, picking up a nearby shopping cart, and attempting to hit the man with it. The man ran toward the CVS, and an off-duty security guard exited the store. The security guard was in uniform and fully armed. The man was frantic, telling the security guard that someone was trying to kill a woman, and he led the security guard to the bus stop.

**¶4**         Meanwhile, another individual was working at a convenience store next to the CVS, when he heard a woman screaming and in distress at the bus stop. The convenience store worker and a customer approached the bus stop. The convenience store worker and the customer observed Martinez hitting A.M. while she tried to cover her head and back away. A.M. fell to the ground, and Martinez stood over her and continued to hit

her. The convenience store worker started yelling at him to stop. Martinez then grabbed a large rock and used it to hit A.M. in the face and head multiple times. The security guard unholstered his gun and yelled at Martinez to drop the rock, but Martinez ignored him. The convenience store worker saw the shopping cart laying on the ground, and he picked it up and used it to shove Martinez until Martinez backed away from A.M. At this point, the customer tackled Martinez to the ground and the convenience store worker called 911. The security guard placed handcuffs on Martinez and the customer continued to hold Martinez down until police arrived.

¶5 The security guard also called police and moved over to A.M. A.M. was awake but in extreme distress, screaming and grabbing at her face. The security guard attempted to hold A.M. still and restrain her so she did not further injure herself. The security guard and another witness heard someone mention a knife, possibly Martinez accusing another person of having a knife, but none of the witnesses ever saw one.

¶6 Police arrived on scene and arrested Martinez. The only coherent statement Martinez made to law enforcement was that he was part of the Mexican Mafia, though this was untrue. Police recovered the large rock covered in blood, as well as a smaller rock covered in blood, which may have broken off the larger rock. Martinez was initially charged with two counts of aggravated assault.

¶7 A.M. was taken to the hospital, and hospital staff described her as being in an "altered mental state." She was unable to provide a spelling of her name, her social security number, date of birth, or address, and so she had to be identified by her fingerprints. Given the severity of her injuries, A.M. was placed in a medically induced coma as doctors attempted to regulate her breathing and heart rate, as well as drain the excess fluid from her brain. However, even with sedation, medication, and the drainage procedure, doctors could not reduce the swelling in her brain. Several days after she was admitted to the hospital, A.M.'s heart suddenly stopped, which doctors believed was the result of brain herniation. Martinez's charges were amended to first degree murder.

¶8 Martinez filed a motion for Arizona Rule of Criminal Procedure ("Rule") 11 proceedings to examine his mental condition. Martinez was evaluated by two psychologists, who both opined he was incompetent to stand trial, but that he could be restored to competency. The superior court committed Martinez to mental health services and the restoration to competency program in January 2018.

3

¶9 Martinez refused to cooperate and participate in psychological testing and assessments with a third psychologist. However, the psychologist used Martinez's mental health records, case records, social media accounts, jail video recordings, and phone call recordings to assess Martinez. The video recordings demonstrated Martinez was calm, relaxed, engaging in appropriate daily activities, and socializing with other inmates. Phone call recordings with his family demonstrated Martinez's speech and thought processes were organized, logical, and goal oriented. In addition, another inmate called Martinez's aunt to let her know Martinez would no longer be able to call her because he was "going through that rule 11 shit and is trying to play it up," and that he was "trying to act like he don't, like, comprehend shit," and acting "incompetent."

¶10 The psychologist issued a report and opined Martinez was competent to stand trial. Although the psychologist believed Martinez did have a history of substance-induced psychosis, she opined that he was "deliberately malingering mental health symptoms for the express intended purpose of avoiding criminal consequences." The psychologist noted that Martinez was "clearly intelligent" and demonstrated an understanding of his case. Based on the report, the superior court found Martinez to be competent and in July 2018 the court issued an order resuming trial proceedings.

¶11 In November 2019, while in jail and awaiting trial, Martinez told two corrections officers he wanted to confess to a murder he committed. The officers told Martinez to put his confession in writing, the letter was secured, and the county attorney's office and law enforcement were notified. The handwritten and signed letter stated:

> I, Edward Vincent Martinez, Inmate T411162—hereby of [stricken word] (no eraser) fully sound mind, on this evening of November 11, 2019 whole-heartedly confess to the murder of [A.M.] on November 5, 2017. It was premeditated. I struck the victim—[A.M.]—approximately four times in the head and face with FULL INTENTION to murder her there on the spot of 35th Avenue just north of Glendale Avenue at approximately 0500 hours. I reiterate that it was a fully premeditated act, once again, having occurred on November 5, 2017.

¶12 Several days before trial, the State offered Martinez a plea deal of second degree murder, with a sentencing range of twenty to twenty five years. Martinez refused the offer.

¶13        At trial, three witnesses to the attack, the responding law enforcement officers, the lead detective, the corrections officers who obtained the confession letter, and A.M.'s treating physician testified. A forensic scientist and DNA analyst testified that A.M.'s blood and DNA were found on the large rock collected from the crime scene, as well as on the sweatshirt and pants Martinez was wearing when arrested. Partial male DNA profiles were located on the rock and on A.M.'s fingernail clippings, but the sources were not suitable for comparison.

¶14        The medical examiner who performed the autopsy of A.M. testified about A.M.'s injuries, which included swelling of the right side of the face and overall head, hemorrhage within the eyes, and lacerations of the scalp and right side of the face. A.M. also had bruising and abrasions on her arms, legs, hands, chest, and back. The medical examiner testified that a hard object caused the head injuries, and A.M. was hit with enough force to tear her entire scalp all the way to the skull, take a chip out of the skull, and cause fractures in multiple facial bones. Internally, A.M. suffered from subdural and subarachnoid hemorrhages, which led to extensive swelling of the brain. The examiner opined that A.M. died of blunt force trauma of the head, consistent with getting repeatedly struck by a large rock.

¶15        After the State rested, Martinez moved for a Rule 20 judgment of acquittal, which the court denied. Martinez did not testify or present evidence. After deliberation, the jury found Martinez guilty of first degree murder.

¶16        The superior court conducted the sentencing hearing in compliance with Martinez's constitutional rights and Rule 26. Martinez was sentenced to a mandatory term of natural life with a presentence incarceration credit of 1,182 days. The court also imposed a $20 time payment fee, $20 probation assessment, $13 criminal penalty assessment, and $2 victim rights enforcement assessment. Martinez was ordered to pay restitution in the amount of $4,277.64 plus interest.

## DISCUSSION

¶17        We review Martinez's conviction and sentence for fundamental error. *See State v. Flores*, 227 Ariz. 509, 512, ¶ 12 (App. 2011). Counsel for Martinez has advised this Court that after a diligent search of the entire record, counsel has found no arguable questions of law. We have read and considered counsel's brief and fully reviewed the record for reversible error, *see Leon*, 104 Ariz. at 300, and find none. All of the

proceedings were conducted in compliance with the Rules.  So far as the record reveals, counsel represented Martinez at all stages of the proceedings, and the sentence imposed was within the statutory guidelines. We decline to order briefing and affirm Martinez's conviction and sentence.

**¶18**    Upon the filing of this decision, defense counsel shall inform Martinez of the status of the appeal and of his future options.  Counsel has no further obligations unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review.  *See State v. Shattuck*, 140 Ariz. 582, 584-85 (1984).  Martinez shall have thirty days from the date of this decision to proceed, if he desires, with a *pro per* motion for reconsideration or petition for review.

## CONCLUSION

**¶19**    For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA

6