NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

JOHN ANDREW EISENBEISS, *Appellant.*

No. 1 CA-CR 24-0678, 1 CA-CR 24-0679
(Consolidated)

FILED 11-13-2025

Appeal from the Superior Court in Yavapai County
No.  V1300CR202280360
V1300CR202280370
The Honorable Michael R. Bluff, Judge

**AFFIRMED AS MODIFIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

Harris & Winger, P.C., Flagstaff
By Chad J. Winger
*Counsel for Appellant*

_____

**MEMORANDUM DECISION**

Judge Daniel J. Kiley delivered the decision of the Court, in which Presiding Judge Angela K. Paton and Judge Brian Y. Furuya joined.

_____

**K I L E Y**, Judge:

**INTRODUCTION**

**¶1**        A jury convicted John Andrew Eisenbeiss of various felonies and he was sentenced to prison. This appeal is filed in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969). Eisenbeiss's counsel has advised this Court that counsel found no arguable questions of law and asks us to search the record for fundamental error. Eisenbeiss was given an opportunity to file a supplemental brief; he has not done so. After reviewing the record, we affirm Eisenbeiss's convictions and sentences as modified.

**FACTUAL AND PROCEDURAL HISTORY**

**¶2**        We view the facts in the light most favorable to sustaining the convictions and resolve all reasonable inferences against Eisenbeiss. *See State v. Fontes*, 195 Ariz. 229, 230, ¶ 2 (App. 1998).

**¶3**        In 2022, Eisenbeiss was in a relationship with S.B. In June 2022, S.B. offered to help a friend sell some rock-climbing gear. Knowing that her former boyfriend, N.B., enjoyed climbing, S.B. invited N.B. over to her house to look over the equipment to see if he wanted to buy it. N.B. agreed to come over on the evening of Friday, June 17 to look at the equipment.

**¶4**        Not wanting to be present when S.B.'s former boyfriend came over, Eisenbeiss left the house shortly before N.B. arrived. Before leaving, Eisenbeiss told S.B. he would text her in "15" or "20 minutes" so they could make their plans for dinner. About 20 minutes after N.B. arrived, Eisenbeiss began texting her; after another ten minutes, he expressed frustration at being kept waiting. Finally, Eisenbeiss texted that he was coming back to the house. S.B. asked him not to, but he did anyway.

**¶5**        When Eisenbeiss arrived at S.B.'s house, S.B. later recalled, he "stormed in," gathered some belongings, and made some angry comments

2

to her. When N.B. offered to leave to defuse the tense situation, Eisenbeiss made a sarcastic comment "to the effect of 'You can have her,'" then left.

¶6        Eisenbeiss went to a nearby restaurant, where he continued to text S.B. Among other messages, he accused her of trying to "rekindle" her romantic relationship with N.B. and told her "goodbye forever." He sent her another text reading, "Have a good life, asshole," along with a photo of her sleeping in the nude, which he had previously taken without her knowledge. Meanwhile, Eisenbeiss ordered a meal and some drinks, paying the bill with S.B.'s credit card and signing her name on the receipt.

¶7        Eisenbeiss then sent S.B. a text threatening to "come back" to her house "and cause some trouble." S.B. replied, "Please don't do that."

¶8        Later that evening, Eisenbeiss returned to S.B.'s house, where S.B. and N.B. were sitting on the front porch. Eisenbeiss got out of his van and began walking up the driveway, at which point N.B. moved toward him. They exchanged angry words and Eisenbeiss "grabbed" N.B. "very forcefully," at which point the two began "scuffling." When N.B. put Eisenbeiss in a headlock, Eisenbeiss appeared to stop struggling, and N.B. let him go.

¶9        Eisenbeiss then stood and drew a gun from his pocket, pointing it at N.B. and threatening to "blow [his] brains out." In fear for his life, N.B. put his hands "in the air" and began to "back away." When S.B. tried to "grab [Eisenbeiss's] arm," he pushed her to the ground. Eisenbeiss then cursed at S.B. and walked back to his van, got in, and drove away.

¶10        Afraid Eisenbeiss would return, S.B. and N.B. got into N.B.'s car and drove to a nearby parking lot, calling the police on the way. Police met them in the parking lot and interviewed them, taking down a description of the van Eisenbeiss was driving. Later that night, police spotted Eisenbeiss's van driving through town. They pulled him over and arrested him.

¶11        A grand jury indicted Eisenbeiss on one count of burglary in the first degree, a class 2 felony in violation of A.R.S. § 13-1508; one count of aggravated assault, a class 3 felony in violation of A.R.S. § 13-1204(A)(2); one count of surreptitious photographing, a class 5 felony in violation of A.R.S. § 13-3019(A)(1); one count of criminal trespass in the first degree, a class 6 felony in violation of A.R.S. § 13-1504(A)(1); one count of disorderly conduct, a class 6 felony in violation of A.R.S. § 13-2904(A)(6); two counts of disorderly conduct, a class 1 misdemeanor in violation of A.R.S. § 13-2904(A)(1); and one count of using electronic communications to terrify,

intimidate, threaten or harass, a class 1 misdemeanor in violation of A.R.S. § 13-2916(A)(2). The grand jury also alleged that the burglary, aggravated assault and disorderly conduct counts were dangerous offenses, *see* A.R.S. § 13-704, and that the surreptitious photographing and disorderly conduct counts were domestic violence offenses, *see* A.R.S. § 13-3601.

¶12         A few days after Eisenbeiss's arrest, S.B. learned of the restaurant charges to her credit card and realized that Eisenbeiss had used her card without her knowledge or consent. She cancelled her credit card and reported Eisenbeiss's unauthorized use of her card to the police.

¶13         A grand jury charged Eisenbeiss with three class 4 felonies relating to the fraudulent credit card charges: forgery in violation of A.R.S. § 13-2002(A)(3); forgery of a credit card in violation of A.R.S. § 13-2104(A)(2); and taking the identity of another in violation of A.R.S. § 13-2008(A).

¶14         The two cases were consolidated, and Eisenbeiss was tried on all counts at a four-day trial in October 2024. The State called S.B., N.B., the responding officers, and other witnesses. After the State rested, Eisenbeiss moved for a judgment of acquittal pursuant to Arizona Rule of Criminal Procedure ("Rule") 20 on two of the disorderly conduct counts and the criminal trespass count. The court granted the Rule 20 motion on all three counts.

¶15         The jury acquitted Eisenbeiss on the using electronic communication to terrify, intimidate, threaten or harass count and convicted him on all remaining counts. The jury further found that the burglary and disorderly conduct offenses were dangerous, and that the burglary, surreptitious photographing, and disorderly conduct offenses were domestic violence offenses. Because Eisenbeiss was charged with aggravated assault under A.R.S. § 13-1204(A)(2), which defines the crime as an "assault . . . us[ing] a deadly weapon or dangerous instrument," the court determined that dangerousness was inherent in the charge, and so the jury was not asked to make a finding of dangerousness on the aggravated assault count. *See* A.R.S. § 13-105(13) (defining "[d]angerous offense" to include "an offense involving the discharge, use or threatening exhibition of a deadly weapon or dangerous instrument[.]"); *State v. Larin*, 233 Ariz. 202, 212, ¶ 38 (App. 2013) (holding that "a jury need not make a finding of dangerousness where it is 'inherent in the crime.'" (citation modified)).

¶16         The trial then proceeded to the aggravation phase. The jury found that the State had proven that "the victim suffered physical,

4

emotional, or financial harm" for the burglary, aggravated assault, and disorderly conduct charges. It also found the State had proven "the infliction or threatened infliction of serious physical injury" for the aggravated assault charge.

¶17 The sentencing hearing was held in December 2024. The court began by noting the aggravating factors found by the jury, and found Eisenbeiss's lack of prior felony convictions, employment, and family and community support to be mitigating factors. The court sentenced Eisenbeiss to 11 years in prison for burglary; concurrent sentences of 10 years for aggravated assault and 2.5 years for disorderly conduct; and a consecutive sentence of one year for the surreptitious photographing, followed by 1.5 years for each of the class 4 felonies, consecutive to the other sentences but concurrent with each other, for a total of 13.5 years. The court gave Eisenbeiss credit for 45 days of presentence incarceration and imposed fees and penalties totaling $2,184.

¶18 Eisenbeiss timely appealed, and we have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

**DISCUSSION**

¶19 We review Eisenbeiss's convictions and sentences for fundamental error. *See State v. Flores*, 227 Ariz. 509, 512, ¶ 12 (App. 2011). We have read and considered counsel's brief and fully reviewed the record for reversible error, *see Leon*, 104 Ariz. at 300, and find none. All of the proceedings were conducted in compliance with the Arizona Rules of Criminal Procedure. So far as the record reveals, counsel represented Eisenbeiss at all stages of the proceedings, and the sentences imposed were within the statutory guidelines.

¶20 Our review of the record has, however, uncovered an error in the calculation of presentence incarceration credit. The court found that Eisenbeiss was entitled to 45 days of presentence incarceration credit based on the calculation in the presentence report. The calculation in the presentence report was based on the original sentencing date of November 25, 2024. Because, due to a change of counsel, Eisenbeiss's sentencing did not take place until December 9, 2024, Eisenbeiss was entitled to additional credit for the 14 days that he spent in custody between November 25 and December 9. Pursuant to A.R.S. § 13-4037, we modify Eisenbeiss's concurrent sentences for burglary, aggravated assault, and disorderly conduct to include credit for 59 days of presentence incarceration credit.

**¶21** Upon the filing of this decision, defense counsel shall inform Eisenbeiss of the status of the appeal and of his future options. Counsel has no further obligations unless, upon review, counsel finds an issue appropriate for submission to the Arizona Supreme Court by petition for review. *See State v. Shattuck*, 140 Ariz. 582, 584–85 (1984). Eisenbeiss shall have thirty days from the date of this decision to proceed, if he desires, with a motion for reconsideration or petition for review filed *in propria persona*.

## CONCLUSION

**¶22** For the foregoing reasons, we affirm Eisenbeiss's convictions and sentences, and modify his sentence to reflect that Eisenbeiss is entitled to 59 days, rather than 45 days, of presentence incarceration credit for the burglary, aggravated assault, and disorderly conduct convictions.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**: JR